# EXHIBIT A

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 14734 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

Daily v. Federal Ins. Co.
N.D.Cal.,2005.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
Gregory S. DAILY, Plaintiff,
v.
FEDERAL INSURANCE COMPANY, et al., Defendant.
No. C 04-3791 PJH.

Jan. 3, 2005.

David Evan Weiss, Cristina M. Shea, Morgan Lewis & Bockius LLP, San Francisco, CA, for Plaintiff.
D. Wayne Jeffries, Michael F. Perlis, R. Leah Rothman, Richard Ray Johnson, Strook & Strook & Lavan LLP, Los Angeles, CA, R. Douglas Noah, Wilson Elser Moskowitz Edelman & Dicker LLP, Dallas, TX, Louis Harrison Castoria, Wilson Elser Moskowitz Edelman & Dick, San Francisco, CA, for Defendants.

ORDER GRANTING MOTION TO STRIKE AND TO DISMISS COUNTERCLAIMS

HAMILTON, J.

*1 Plaintiff's motion for an order dismissing counterclaims and striking counterclaims came on for hearing before this court on December 15, 2004. Plaintiff and counterdefendant Gregory S. Daily ("Daily") appeared by his counsel Cristina M. Shea, defendant and counterclaimant Federal Insurance Company ("Federal") appeared by its counsel D. Wayne Jeffries, and defendant and counterclaimant Royal Insurance Co. of America ("Royal") appeared by its counsel Louis H. Castoria. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the motion as follows and for the reasons stated at the hearing.

INTRODUCTION

This is an action seeking a judicial declaration regarding insurance coverage. In April 2001, Federal issued an executive protection policy ("the Federal policy") to Nova Corporation ("Nova"). In May 2001, Royal issued an "excess liability" policy ("the Royal policy") to Nova, intended to cover claims in excess of the Federal policy limits. The policy period for each of these policies was May 1, 2001 to May 1, 2002. Daily was an officer or director of Nova, and claims that he was covered by the policies for any "wrongful acts" he might commit in that capacity (as defined in the Federal policy). The policies contain numerous conditions and exclusions from coverage.

In July 2001, U.S. Bancorp ("USB") became the successor-in-interest to Nova as a result of the merger of Nova into USB. In November 2002, Auerbach Acquisition Associates ("Auerbach") filed suit against several defendants, including Daily and USB. That case, *Auerbach Acquisition Assoc., Inc. v. Greg Daily,* was filed in the Superior Court of California, County of Los Angeles. Auerbach alleged that Daily had committed various unlawful acts in his capacity as an officer and director of Nova.

Daily sought reimbursement from Federal for the attorneys' fees and costs incurred in defending against the Auerbach suit. Federal has taken the position that there is no coverage. Daily filed this action for declaratory relief in San Francisco Superior Court on August 20, 2004, against Federal. He filed a first amended complaint on August 26, 2004, adding Royal as a defendant. He seeks a declaration that Federal is obliged to advance defense costs and to reimburse him for any costs he incurs as a result of any settlement of the Auerbach suit; and that Royal has an obligation to pay any defense costs, judgment, or settlement amounts that exceed the limits of the Federal policy.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 14734 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

Both Federal and Royal were served with the summons and complaint in late August 2004, and Federal removed the case on September 9, 2004, on grounds of diversity jurisdiction. Royal joined in the notice of removal. Federal filed an answer and counterclaims on September 16, 2004, and Royal filed an answer and counterclaims on September 20, 2004. Daily filed the present motion to dismiss and strike the counterclaims on October 12, 2004. Federal filed amended counterclaims on November 1, 2004, adding a fourth counterclaim.

1. Federal's Counterclaims

*2 Federal asserts that Daily is not covered by the Federal policy because the *Auerbach* complaint does not allege that Daily engaged in "wrongful acts" as defined by the policy. According to Federal, Auerbach claims that Daily misappropriated Auerbach's proprietary business plans with regard to a contemplated joint investment so that he himself could obtain a management position with the company formed as a result of the joint investment, and has alleged claims of fraud, interference with contract, and interference with prospective economic advantage.

Federal maintains that Daily was not acting in an insured capacity in connection with the events alleged in the *Auerbach* suit, and asserts that there is no potential for indemnity insurance coverage under the Federal policy for this alleged misappropriation, or of coverage for any settlement by or judgment against Daily in connection with the suit. Federal also asserts that the sums sought by Auerbach are uninsurable because they seek, in essence, payment of contractual or quasi-contractual debts owned to Auerbach, restitution or disgorgement of profits, damages caused by Daily's willful conduct, and punitive damages.

In its amended counterclaims, Federal asserts (1) a claim for declaratory relief, seeking a judicial determination of the parties' rights and duties under the Federal policy and in the action (referring to the present action); (2) a claim for offset to avoid unjust enrichment; (3) a claim for offset for money had and received; and (4) a claim for reimbursement of monies advanced for defense costs in the *Auerbach* suit.

In its first counterclaim, Federal seeks a judicial determination that there is no indemnification possible, as a matter of law, for Daily's settlement of his debts or obligations to Auerbach. Federal also seeks a determination that the sums sought by Auerbach do not constitute covered loss as defined in the Federal policy, because the Federal policy excludes coverage for matters uninsurable under the law.

In the two "offset" counterclaims (the second and third counterclaims), Federal alleges that *if* it is required to provide coverage for Daily's settlement of the Auerbach suit, it will then be entitled to an offset in the amount of the value of benefits Daily received in exchange for incurring the obligations discharged in the settlement; and that *if* it is required to indemnify Daily for his payment of the settlement, it will then be entitled to an offset in the amount of the value of the debt avoided by Daily by means of the settlement.

In the counterclaim for reimbursement of monies advanced (the fourth counterclaim), Federal seeks to recoup $250,000 advanced to Daily on September 24, 2004, for defense costs.

2. Royal's Counterclaims

Royal asserts that the Royal policy does not afford coverage for claims involving the restitution or disgorgement of any benefit received by Daily, and that the restitution of benefits received does not constitute a loss. Royal also claims that its policy does not provide coverage for loss based upon or in consequence of any debt or obligation, on actual or alleged breach of contract, on any wrongful act on the part of Daily, or on any claim for punitive damages. Royal asserts in addition that Daily failed to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 14734 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

Page 3

provide timely notice of the claim pursuant to the terms of the Royal policy, that Daily does not allege exhaustion of the primary limit (exhaustion of the limit in the Federal policy), that Daily has failed to cooperate in the investigation of the claim,

*3 Royal pleads five counterclaims for declaratory relief. Royal seeks (1) a declaration that Daily was not acting in an insured capacity on behalf of Nova in connection with the matters alleged in the Auerbach suit; 2) a declaration that there is no obligation under the Royal policy because plaintiff has not alleged or established the exhaustion of the Federal policy; (3) a declaration that the "loss" asserted by Daily is uninsurable under the Federal policy because the Auerbach suit seeks recovery of funds that were wrongfully obtained by Daily; (4) a judicial determination of the parties' respective rights and obligations in connection with the Royal policy and the claim asserted in the Auerbach suit; and (5) a judicial determination of other issues that have not yet been identified in the suit.

DISCUSSION

A. Motion to Dismiss Federal's Second and Third Counterclaims and Royal's Third Counterclaim)

1. Legal Standard

A court should dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim only where it appears beyond doubt that plaintiff can prove no set of facts in support of the claim which would entitle the plaintiff to relief. *See Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Williamson v. Gen'l Dynamics Corp.,* 208 F.3d 1144, 1149 (9th Cir.), *cert. denied,* 531 U.S. 929, 121 S.Ct. 309, 148 L.Ed.2d 247 (2000). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Smith v. Jackson,* 84 F.3d 1213, 1217 (9th Cir.1996).

2. Daily's Motion to Dismiss

Daily seeks an order dismissing Federal's second and third counterclaims-the "offset" counterclaims.[FN1] He contends that these counterclaims do not state a claim because they are not supported by a cognizable legal theory; that they are not recognized by common sense; and that the court is limited to determining only coverage issues.

> FN1. Both Federal's opposition to the motion and Daily's reply to the opposition address only the motion to dismiss Fedeal's second and third counterclaims, not the recently added fourth counterclaim for reimbursement of monies advanced.

Daily also seeks an order dismissing Royal's "offset" counterclaim-Royal's third counterclaim for declaratory relief. However, Royal's "offset" allegations are part of its request for a judicial declaration regarding the parties' rights under the insurance policies at issue-thus Royal's third counterclaim is not a legal claim for relief, as are Federal's second and third counterclaims.

First, Daily argues that the offset claims are in reality subrogation claims, based on the insurers' contention that if they are required to provide coverage to Daily, they are also entitled to offset that coverage obligation because of Daily's alleged wrongful conduct that led to the *Auerbach* suit. Daily contends that this is simply a claim for subrogation, and that under California law, the principle of equitable subrogation cannot be used by an insurer to recover money from its own insureds. He claims that if the court determines that the insurers are responsible under the terms of the insurance policies for paying his defense costs and the costs of any settlement or damages, then they must pay, and cannot attempt to seek offset from their own insured.

Second, Daily argues that the insurers' claims for offset are not supported by common sense, because if the court finds that the insurers are required to provide coverage, then they are required to offer

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 14734 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

Page 4

coverage, and the court will not then find that they are *not* required to provide coverage. Daily contends that the "offset" claims are moot, and not properly raised as counterclaims.

*4 Third, Daily argues that this court is limited to determining only coverage issues, and that the claims for "offset" are irrelevant. Daily contends that in a declaratory relief action tried before the insured's liability has been established, the court must limit its declaration to whether the claim is covered by the policy, and cannot determine the amount of the insurer's indemnity obligation. Daily asserts that the trial in the *Auerbach* case is not set to begin until January 2005, and there has been no settlement. Thus, he asserts, the court is limited to determining the issues set forth in the complaint.

In opposition, Federal argues that the "offset" claims are well-recognized, citing a treatise, Allan D. Windt, *Insurance Claims & Disputes*, for the proposition that an insurer should be entitled to offset from the amount it would otherwise owe under its policy an amount equal to the insured's "unjust enrichment," in a case where an insured has obtained a financial benefit from its wrongdoing, and the insurance company would pay off the insured's entire claim. Federal claims that Daily profited from the transaction or series of transactions that led to the filing of the *Auerbach* suit, and that *if* Federal is obligated to pay under the policy, equity requires that Daily be compelled to give the money back to Federal.

Federal insists that its "offsets" are counterclaims, not affirmative defenses. Federal also contends that the "offsets" do not involve subrogation against an insured. Federal claims that these two counterclaims are "well-established legal causes of action," and do not involve subrogation against an insured. Federal contends that subrogation is a right implied by law, which gives the insurer the right to recover damages from the person responsible for the loss-where the insurer "stands in the shoes" of the insured and is subject to all the insured's rights and liabilities against third parties. Federal asserts that its "offset" claims do not require it to "stand in the shoes" of Daily, since the counterclaims are Federal's own direct legal causes of action against Daily, based on his implied obligation to surrender to Federal the value by which any monies, property or other benefits he received at Federal's expense exceed the amount of his insurable loss.

Royal's third counterclaim-the "offset" declaratory relief counterclaim-is modeled on Federal's "offset" counterclaims. Royal refers to its "offset" declaratory relief counterclaim as an "offset claim." Royal previously acknowledged, however, in its opposition to Daily's motion for remand, that none of its counterclaims were legal claims for damages.

The court finds that the motion must be GRANTED. The court agrees with plaintiff that the issue in this case is whether the terms of the policy require coverage. If the policy requires that Federal and Royal pay Daily's defense costs and the costs of any settlement or judgment, then they have to pay. If Daily is not covered under the policy, whether based on an exclusion in the policy, or on the definition of "covered loss," or for some other reason, the insurers do not have to pay.

*5 The insurers' offset counterclaims can be viewed either as at attempt to gain equitable subrogation from Daily, or as affirmative defenses to Daily's claim for declaratory relief. In either case, they must be dismissed. In particular, if viewed as an attempt to assert a right of subrogation, they must be dismissed because subrogation exists only with respect to the rights of an insurer against third persons to whom the insurer owes no duty. *St. Paul Fire & Marine Ins. Co. v. Murray Plumbing and Heating Corp.*, 65 Cal.App.3d 66, 135 Cal.Rptr. 120 (1976).*Id.* at 75, 135 Cal.Rptr. 120 (citing 16 *Couch on Insurance 2d*, § 61:133).

It is true, as a general principle, that "offset" claims are legal claims, but in the present case, the insurers are attempting to use these "offset" claims as sort of substitute policy exclusions-in other words, to use them to justify non-payment under

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 14734 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

Page 5

the policy. Daily is correct is asserting that the D & O liability policy was purchased by Nova to cover the wrongful acts of its officers and directors. Daily is also correct in asserting that numerous cases reflect situations where insurers have to cover liability claims involving misappropriation in one form or another. The question is simply whether the person and the acts are covered under the policy.

B. Motion to Strike Federal's First Counterclaim and Royal's First through Fifth Counterclaims

1. Legal Standard

Federal Rule of Civil Procedure 12(f) provides that the court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."Fed.R.Civ.P. 12(f). Motions to strike are not favored and "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation."*Colaprico v. Sun Microsystem, Inc.,* 758 F.Supp. 1335, 1339 (N.D.Cal.1991). When a court considers a motion to strike, it "must view the pleading in a light most favorable to the pleading party."*In re 2TheMart.com. Inc. Sec Lit.,* 114 F Supp.2d 955, 965 (C.D.Cal.2000). A court must deny the motion to strike if there is any doubt whether the allegations in the pleadings might be relevant in the action. *Id.*

2. Daily's Motion to Strike

Daily argues that the counterclaims seeking declaratory relief (Federal's first counterclaim and Royal's counterclaims one through five) should be stricken pursuant to Rule 12(f) because they are redundant to his own cause of action for declaratory relief, which seeks a judicial declaration of the parties' respective rights and duties with regard to the insurers' obligation to provide coverage for the *Auerbach* claim.

Federal contends that its counterclaim is not redundant, and that it should be allowed to plead its own side of the story. Federal argues that its counterclaim not only seeks resolution of the question of coverage, but also raises issues of allocation and public policy.

Royal asserts that it had no knowledge of the *Auerbach* suit before it was named as a defendant by Daily, and argues that it should be permitted to proceed with its own claims against Daily. Royal also contends that its counterclaims allege specific grounds for a declaration of non-coverage, and are not duplicative of Daily's claim for declaratory relief. With regard to its third counterclaim for declaratory relief, Royal asserts that it is really a claim for offset, which is a recognized and independent cause of action.

*6 The court finds that the motion must be GRANTED. Plaintiff seeks a declaration of the parties' rights and responsibilities with respect to coverage for the claim in the *Auerbach* suit, and a judicial determination 1) that the policies provide him with insurance coverage for amounts that he is and shall become legally obligated to pay in connection with the claim in the *Auerbach* action, including defense costs, and that Federal has an immediate duty to advance defense costs as set forth in the Federal policy; 2) that the amounts he has incurred to date in defending the claim in the *Auerbach* suit must be paid by Federal pursuant to its obligation to advance defense expenses under the Federal policy; and 3) that Royal has an obligation to pay any defense costs, settlement, or judgment in excess of the limits of the Federal policy.

The counterclaims for declaratory relief asserted by Federal and Royal all seek the same result as Daily's cause of action for declaratory relief, and to that extent, are redundant. Federal's and Royal's counterclaims for declaratory relief essentially seek a determination that each of those entities is not obligated to provide Daily with insurance coverage for the amounts he is and shall be legally obligated to pay in connection with the claim in the *Auerbach* suit. The general allegations supporting the coun-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 14734 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

Page 6

terclaims advance various reasons that Federal or Royal is not obligated to pay, as does each of the individual declaratory relief counterclaims. Both Daily and the insurers seek a judicial determination of whether the insurers are required to pay Daily's defense expenses and the cost of any judgment or settlement. Resolution of Daily's claim, along with the affirmative defenses asserted by Federal and Royal, will resolve all questions raised by the insurer's counterclaims.

As for the propriety of striking the counterclaims, there is authority on both sides of the question. Nevertheless, the stronger side favors striking them (or dismissing them, which in this case appears to be the same thing). The court was unable to locate any Ninth Circuit authority, or any pertinent recent district court authority from within the Ninth Circuit. Wright & Miller state,
[W]hen [a] request for declaratory relief brings into question issues that already have been presented in plaintiff's complaint and defendant's answer to the original claim, a party might challenge the counterclaim on the ground that it is redundant and a decision on the merits of plaintiff's claim will render the request for declaratory judgment moot.

Wright, Miller & Kane, *Federal Practice and Procedure,* Civil 2d § 1406, cited in *Postal Instant Press v. Jackson,* 658 F.Supp. 739, 742 (D.Colo.1987); see also *Aldens, Inc. v. Packel,* 524 F.2d 38, 51 (3d Cir.1975) (counterclaim for declaratory judgment that application of Pennsylvania statute was unconstitutional became moot upon disposition of action for declaratory judgment that application of statute was constitutional, and citing Wright & Miller, § 1406); *Mille Lacs Band of Chippewa Indians v. State of Minn.,* 152 F.R.D. 580, 582 (D.Minn.1993) (counterclaim seeking declaration of Indian tribe's treaty rights and rights to hunt and fish were no longer in effect was redundant in case where plaintiff tribe sought declaratory judgment that tribe retained treaty rights); *Green Bay Packaging, Inc. v. Hoganson & Assoc.,* 362 F.Supp. 78, 82 (N.D. Ill.1973 (striking declaratory relief counterclaims seeking resolution, from defendants' perspective, of same issues raised in plaintiff's cause of action for declaratory relief).

*7 Federal relies heavily on a 1978 district court opinion, *Iron Mountain Sec. Storage Corp. v. American Specialty Foods, Inc.,* 457 F.Supp. 1158 (E.D.Pa.1978). In that case, a creditor brought suit against a debtor and its parent corporation seeking a declaration that the debtor was obligated, under an option agreement, to pay more than the debtor had offered for repurchase of promissory notes. The debtor and parent corporation counterclaimed for damages for breach of the option agreement and asserted a tort claim for bad faith breach of contract. The plaintiff argued that the counterclaim for breach of the option agreement was superfluous because it was a "mirror image" of the plaintiff's claim, and asserted further that the defendants could achieve what they sought by successfully defending against the plaintiff's claim. The court refused to dismiss the counterclaim, finding that the defendants sought more than a declaration in favor of their interpretation of the contract, as they also sought damages for breach of contract. Thus, the court found, the counterclaim raised issues beyond the scope of the complaint. *Id.* at 1162.

The court also stated, "I know of no rule preventing the assertion of a counterclaim merely because the theory relied upon is the converse of that in the complaint." *Id.* at 1161-62. The court noted that plaintiff had relied on only one case, the 1973 decision in *Green Bay Packaging,* cited above, and stated, "I have found no other case which has followed [*Green Bay'* s] holding or is in accord with its reasoning." *Id.* at 1161 n. 3. In the present motion, Federal refers to *Iron Mountain* as "the most widely-cited case on point," and complains that Daily "does not bother to address in his [motion to dismiss] the well-reasoned and persuasive [decision in *Iron Mountain* ]."

Wright & Miller caution that there is a "possibility that it is very difficult to determine whether the declaratory judgment counterclaim

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 14734 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

Page 7

really is redundant prior to trial."Wright & Miller, § 1406. This is obviously the situation faced by the court in *Iron Mountain,* where the complaint sought a judicial declaration regarding the parties' rights under the option contract, while one counterclaim sought damages for breach of the option contract and a second counterclaim alleged bad faith breach of contract. There is nothing particularly persuasive, however, about *Iron Mountain* in the context of the present dispute. The cautionary language from Wright and Miller is logically less applicable in cases where both the plaintiff's cause of action and the defendant's counterclaim are for declaratory relief, on the same issue (*i.e.,* the rights of the parties with regard to insurance coverage).

In the other case cited by Federal-*Int'l Woodworkers of America v. McCloud Lumber Co.,* 119 F.Supp. 475 (N.D.Cal.1953)-a case brought under the Labor Management Relations Act, the plaintiff labor union brought an action for declaratory relief, and the defendant employer lumber company asserted a counterclaim for declaratory relief. The Northern District of California noted that the defendant had filed a counterclaim, raising the same issues as one of the plaintiff's causes of action. The court simply stated, without any further comment or analysis, that "[a] counterclaim for a declaratory judgment is permissible" and that "[u]nder all the circumstances of this case, the Court holds that the defendant is entitled to a declaratory judgment in conformity with this opinion."*Id.* at 488.This case, in which the court did not explain its reasoning, does not provide strong support for Federal's position.

### CONCLUSION

*8 In accordance with the foregoing, the court finds that plaintiff's motions must be GRANTED.

IT IS SO ORDERED.

N.D.Cal.,2005.
Daily v. Federal Ins. Co.
Not Reported in F.Supp.2d, 2005 WL 14734 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.