Richard R. Olsen (*pro hac vice*)
rolsen@twwlaw.com
Timothy M. Frank (*pro hac vice*)
tfrank@twwlaw.com
**T. WADE WELCH & ASSOCIATES**
2401 Fountainview, Suite 700
Houston, Texas 77057
Telephone: (713) 952-4334
Facsimile: (713) 952-4994

Attorneys for Plaintiffs/Counter-defendants

Andrew P. Bridges (SBN: 122761)
abridges@winston.com
Jennifer A. Golinveaux (SBN: 203056)
jgolinveaux@winston.com
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, California 94111-5894
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

Attorneys for Defendant/Counterclaimant
Freetech, Inc.

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| ECHOSTAR SATELLITE L.L.C. et al., <br><br> Plaintiffs, <br><br> v. <br><br> FREETECH, INC. and DOES 1-10, <br><br> Defendants. | Case No. CV-07-6124 (JW) <br><br> **JOINT CASE MANAGEMENT STATEMENT** |
| FREETECH, INC., <br><br> Counterclaimant, <br><br> v. <br><br> ECHOSTAR SATELLITE L.L.C. et al., <br><br> Counter-defendants. | |

Pursuant to Federal Rule of Civil Procedure 26(f) and Civil L.R. 16-9, Plaintiffs/Counter-defendants EchoStar Satellite L.L.C., EchoStar Technologies Corporation, (collectively "EchoStar") and NagraStar L.L.C. ("NagraStar")[1] and Defendant/Counterclaimant Freetech, Inc. ("Freetech" or "Defendant") conferred telephonically on March 3, 2008 on a proposed discovery and case management plan, and respectfully submit this Joint Case Management Statement for consideration by the Court.

## I.   JURISDICTION AND SERVICE

Plaintiffs seek relief under the Digital Millennium Copyright Act, 17 U.S.C. § 1201 et seq., Communications Act of 1934, 47 U.S.C. § 605 et seq., Electronic Communications Privacy Act, 18 U.S.C. § 2511 et seq., and California state law. The Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331, 1338, and 1367. Freetech's counterclaims for declaratory relief are within the jurisdiction of the Court pursuant to 28 U.S.C. §§ 1331, 1338, 1367, and 2201. The parties do not contest personal jurisdiction or venue.

Plaintiffs anticipate naming additional parties specifically as the true identities of the "Doe" defendants are later discovered. Plaintiffs' proposed deadline for serving a party is November 21, 2008. Freetech's proposed deadline for serving, or dismissing, a party is April 16, 2008. (*See infra* Part XVII.)

## II.   FACTS

### A.   Plaintiffs' Statement

EchoStar is a multi-channel video provider, providing video, audio, and data services to customers throughout the United States, Puerto Rico, and the U.S. Virgin Islands via a Direct Broadcast Satellite ("DBS") system. EchoStar uses high-powered satellites to broadcast, among other things, movies, sports, and general entertainment services ("Programming") to consumers who have been authorized to receive such services after payment of a subscription fee or purchase price). EchoStar operates its DBS Programming under the trade name "DISH Network."

EchoStar protects DISH Network Programming from unauthorized viewing by using a management and security system provided by NagraStar ("Security System"). The Security

---

[1] EchoStar and NagraStar are collectively referred to herein as "Plaintiffs."

1  System allows EchoStar to encrypt (electronically scramble) its satellite signals using proprietary
2  "Access Cards" that contain a microprocessor component that functions as a security computer to
3  a "conditional access system" known as Digital Nagra Advanced Security Process ("DNASP").
4  These Access Cards are utilized in the satellite receivers that customers either purchase or lease,
5  and are equipped with secret keys and software that contain technology codes ("Nagra Software")
6  used to communicate with the receiver and enable the descrambling of DISH Network
7  Programming.

8  Despite continual improvements to Plaintiffs' Security System, satellite piracy proliferates
9  with the ever-growing access and popularity of the Internet. With the Internet as a sword, pirates
10 steal DISH Network Programming by using so-called "free-to-air" receivers ("FTA Receivers").
11 FTA Receivers are devices that can receive "free-to-air" satellite television signals, which are
12 either not scrambled or scrambled but available free of charge. "Free-to-air" channels do not
13 offer the same type of popular programming found in subscription television packages. Instead,
14 "free-to-air" television channels typically include limited ethnic, religious, business, music,
15 information, and advertising content.

16 While FTA Receivers contain many of the same components found in an EchoStar set-top
17 box, the units cannot descramble and receive DISH Network Programming without utilizing the
18 security keys and technology codes found in the Nagra Software (i.e. ROM code segment,
19 EEPROM code segment). Upon information and belief, manufacturers of FTA Receivers
20 developed firmware and components within each unit that have been specifically designed to
21 communicate, accept, and receive illegal pirate software ("Pirate Software") that contains the
22 secret keys and codes to Plaintiffs' Security System. Once this technology is downloaded or
23 "flashed" into the FTA Receiver, the unit will illegally receive DISH Network Programming.

24 Freetech imports a variety of "Coolsat" branded FTA Receivers from a manufacturer in
25 Asia. It is believed discovery will show that this manufacturer not only creates the firmware and
26 components within each device, but develops, designs, and updates the requisite Pirate Software
27 with the assistance and support of Defendant. Thereafter, Freetech directly, and through others
28 acting in concert, distributes the updated Pirate Software to select website administrators and

3  JOINT CASE MANAGEMENT
   STATEMENT

moderators, who then disseminate this illegal technology to consumers on the Internet. Although Plaintiffs continue to develop technological measures that effectively control access to the copyrighted Programming on the DISH Network satellite platform, the demand for updated Pirate Software remains constant. Defendant continues to violate federal and state law by offering to the public, providing, or otherwise engaging in the traffic of devices, components, and technology that are primarily designed to circumvent and/or defeat Plaintiffs' Security System and ultimately facilitate the interception of EchoStar's encrypted satellite signals and DISH Network Programming.

### B. Freetech's Statement

Freetech imports Free-To-Air ("FTA") satellite receivers and distributes them under its Coolsat brand. FTA receivers allow consumers to receive legitimate, unencrypted, public satellite broadcasts and to display these broadcasts on their televisions. Such equipment has been available to consumers for decades, and its use has become widespread. In 2004, sales of satellite receivers for FTA signal reception were expected to outpace, for a second year in a row, sales of satellite receivers tied to subscription service providers, 36 million to 29 million. Data from mid-2007 shows that some 30 to 40 million people in Europe alone are getting their television from FTA satellite transmissions.

Plaintiffs and Counter-defendants themselves are aware of the legitimate and important uses of FTA receivers. The website of Echostar Europe, an Echostar affiliate, touts that it has sold "millions of receivers for . . . Free to Air markets" and is "Powering the free-to-air revolution." Moreover, Plaintiffs and Counter-defendants concede in their statement of facts that FTA receivers "cannot descramble and receive DISH Network Programming without utilizing [proprietary] security keys and technology codes."

FTA broadcasts are freely available throughout the world, including in the United States. FTA programming, in both English and numerous foreign languages, offers entertainment, educational enrichment, news gathering, and cultural experiences, some of which are simply unavailable through terrestrial broadcasts – the familiar broadcasts emanating from the land-based transmitters of local television stations. By way of example, FTA broadcasters targeting the

United States include PBS, Al Jazeera English, NASA TV, China Central Television 9, and PressTV.

Plaintiffs and Counter-defendants's Complaint, filed on December 4, 2007, alleges that Freetech's importation, distribution, or use of Coolsat receivers is unlawful under the Digital Millennium Copyright Act and other state and federal laws. It alleges that Coolsat receivers are primarily designed for unlawful purposes and even accuses Freetech of intercepting Echostar broadcasts and developing hacking software for Coolsat receivers. These allegations – many made on information and belief and prefaced by the disavowing phrase "discovery will show" – are simply baseless. Coolsat receivers are designed for lawful purposes, and Freetech has not imported, marketed, or used Coolsat devices for unlawful purposes. Nor does Freetech intercept encrypted transmissions or develop hacking software. Notably, although Plaintiffs and Counter-defendants' Complaint alleged interception by Freetech, a required element of their claim under Section 2511(a) of the Wiretap Act, the allegation is nowhere in their statement of facts above.

In reality, Freetech actively takes steps to discourages the hacking that Plaintiffs and Counter-defendants allege. When Coolsat users visit Freetech's website, they are told that they must agree to "not use Coolsat products in any way whatsoever to intercept any satellite television signal without proper authorization." Further, in the support portion of Freetech's website, which contains the authorized Coolsat firmware updates, Freetech warns consumers that "Coolsat receivers are only for use with Coolsat authorized software. Unauthorized software cannot, by any means, be used with a Coolsat receiver. Should any receiver contain such unauthorized software, the warranty will be null and void." Freetech also requires its distributors to "agree not to engage in . . . practices" that include "downloading of unauthorized third-party software or other methods to decrypt subscription-based programming systems."

Freetech believes that Plaintiffs and Counter-defendants have no basis for their lawsuit, but have filed it to conduct a burdensome fishing expedition and to create an intimidating environment designed to ruin Freetech's business. Freetech has sought Early Neutral Evaluation by an independent neutral, but counsel for Plaintiffs and Counter-defendants have rejected ADR entirely on the explicit ground that Plaintiffs and Counter-defendants' goal is to put Freetech out

of business.

## III. LEGAL ISSUES

### A. Plaintiffs' Statement

The principal legal issues include, but are not limited to, the following:

1. With respect to Count I, Defendant's violation of 17 U.S.C. §§ 1201(a)(2), (b)(1) by manufacturing, importing, offering to the public, providing, or otherwise trafficking in "Coolsat" branded FTA Receivers and corresponding Pirate Software.

2. With respect to Count II, Defendant's violation of 47 U.S.C. § 605(a) by intercepting EchoStar's encrypted satellite signal, or assisting others in intercepting EchoStar's satellite signal through Defendant's design, manufacture, development, assembly, modification, solicitation, and/or distribution of "Coolsat" branded FTA Receivers and Pirate Software.

3. With respect to Count III, Defendant's violation of 47 U.S.C. § 605(e)(4) by designing, manufacturing, developing, assembling, modifying, importing, exporting, selling, or otherwise distributing "Coolsat" branded FTA Receivers and Pirate Software, knowing or having reason to know that such products are primarily of assistance in the unauthorized reception of EchoStar's encrypted satellite signal.

4. With respect to Count IV, Defendant's violation of 18 U.S.C. § 2520(a) by intercepting EchoStar's encrypted satellite signal through the use of "Coolsat" branded FTA Receivers and Pirate Software, which is prohibited by section 2511(a) of the Wiretap Act.

5. With respect to Count V, Defendant's violation of California Business & Professions Code § 17200 by engaging in unlawful and unfair acts and practices, including, without limitation, its promotion, distribution, and provision of "Coolsat" branded FTA Receivers and Pirate Software.

6. With respect to Count VI, Defendant's unjust enrichment that resulted from having usurped Plaintiffs' trade secrets, proprietary information, revenues, and other property rights through the circumvention of Plaintiffs' Security System and the interception of EchoStar's encrypted satellite signal.

B.  Freetech's Statement

Plaintiffs and Counter-defendants have, in their statement above, merely restated their claims without identifying and legal issues. Rather than respond in kind, Freetech identifies the following as some principal legal issues:

1.  Whether Freetech can be liable for a violation of sections 1201(a)(2) and (b)(1) of the Digital Millennium Copyright Act, section 605(e)(4) of the Communications Act, or any other law asserted by Plaintiffs and Counter-defendants, for providing a general purpose satellite receiver that may be altered by means of third-party software to receive Plaintiff and Counter-defendants' satellite programming.

2.  Whether Nagrastar, simply a developer of security technologies, has suffered injury in fact and has standing to sue Freetech.

3.  Whether Echostar lacks standing to bring a claim under California's Unfair Competition Law, or has no right to monetary relief under that law, because it has no restitutionary interest in any of Freetech's money or property.

4.  Whether Plaintiffs and Counter-defendants may bring a claim for Unjust Enrichment under California law.

4.  Whether Plaintiffs and Counter-defendants' claims are barred by Freetech's affirmative defenses.

5.  Whether Freetech is entitled to a declaration of non-violation of Plaintiffs and Counter-defendants' rights.

IV.  **MOTIONS**

Pending before the Court is Plaintiffs' motion to dismiss or strike the counterclaims filed by Freetech. The matter has been fully briefed by the parties and will be heard on the date of this conference—March 17, 2008. The parties anticipate motions for summary judgment, or other dispositive motions, on both the affirmative claims and counterclaims in this action.

V.  **AMENDMENT OF PLEADINGS**

Plaintiffs foresee naming additional parties specifically as the true identities of the "Doe" defendants are subsequently discovered. Plaintiffs propose September 19, 2008 as the deadline to

amend a pleading or join an additional party. Freetech proposes April 16, 2008 as the deadline to amend a pleading or join an additional party. (*See infra* Part XVII.)

## VI. EVIDENCE PRESERVATION

### A. Plaintiffs' Statement

Plaintiffs implemented measures to safeguard documents, including electronically stored information, relevant to issues reasonably evident in this case. In particular, Plaintiffs formally notified employees in July 2007, and again in December 2007, of the need to retain potential discovery materials. The employees were instructed to preserve any documents, in electronic or hard copy format, concerning various aspects of free-to-air piracy, including, without limitation, investigations, efforts to combat, and the impact on Plaintiffs.

### B. Freetech's Statement

Freetech has also implemented measures to preserve documents for this litigation. It notified employees in December 2007 of the need to preserve materials, including electronically stored material, relevant to issues reasonably evident in this case.

## VII. DISCLOSURES

The parties agree to exchange disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1) on or before March 20, 2008.

## VIII. PROPOSED DISCOVERY PLAN

### A. Status of Discovery

Neither party has propounded discovery in this action.

### B. Scope of Anticipated Discovery

Plaintiffs anticipate discovery on at least the following subject matters:

1. Design and development of Freetech hardware and software;
2. Importation and distribution of Freetech hardware and software;
3. Advertising and marketing of Freetech hardware and software;
4. Servicing and repair of Freetech hardware and software;
5. Structure and ownership of Freetech and related entities;
6. Evidence preservation efforts by Freetech and related entities.

Without limitation, Defendant anticipates discovery on at least the following subject matters:

    1. Evidence underlying Plaintiffs and Counter-defendants' claims;

    2. Evidence on which Plaintiffs and Counter-defendants based their Complaint;

    3. Plaintiffs and Counter-defendants' claimed authority to act on behalf of broadcasters and content providers;

    4. Plaintiffs and Counter-defendants' financial information related to alleged damages and causation of damages;

    5. Plaintiffs and Counter-defendants' own involvement in the Free-To-Air industry;

    6. Plaintiffs and Counter-defendants' research and development activities;

    7. Plaintiffs and Counter-defendants' design of products related to satellite broadcasting and reception;

    8. Plaintiffs and Counter-defendants' activites to compete with or otherwise limit FTA broadcasting or reception;

    9. Evidence preservation efforts by Plaintiffs and Counter-defendants and related entities.

C. <u>Limitations on Discovery</u>

    1. <u>Written Discovery</u>.

The parties agree that requests for production or inspection and requests for admission are unlimited in accordance with the Federal Rules of Civil Procedure. The parties disagree on the number of interrogatories needed.

    a. Plaintiffs' Position

Plaintiffs' position is that EchoStar and NagraStar each be permitted to propound thirty (30) interrogatories on Defendant, and Defendant be permitted to propound thirty (30) interrogatories on EchoStar and thirty (30) interrogatories on NagraStar, totaling sixty (60) requests per side.

b. Freetech's Position

Freetech's position is that the two EchoStar plaintiffs would be allowed twenty-five (25) interrogatories total, and the NagraStar plaintiff would be allowed (25) interrogatories, and that Freetech would be permitted to propound twenty-five (25) interrogatories on the EchoStar plaintiffs, and twenty-five (25) interrogatories on NagraStar, totaling fifty (50) requests per side.

2. Depositions.

a. Plaintiffs' Position

Plaintiffs' position is that each side be permitted to conduct twenty (20) depositions given the number of necessary witnesses in this case, including Freetech personnel and authorized dealers, pirate website owners and administrators, and other individuals or entities responsible for the design, manufacture, or distribution of Freetech hardware and/or software. In addition, Plaintiffs propose taking the following depositions pursuant to Federal Rule of Civil Procedure 30(b)(6): (1) Defendant's custodian of records and/or information officer with knowledge of the computer systems, programs, and preservation measures used in the ordinary course of business; and (2) Defendant's corporate representative, which may include multiple deponents. Equally, Defendant may take the Rule 30(b)(6) deposition of the custodian of records and/or information officer with knowledge of the computer systems, programs, and preservation measures used in the ordinary course of business at EchoStar and NagraStar, and, separately, the corporate representative for EchoStar and NagraStar, which may include multiple deponents.

b. Freetech's Position

Freetech believes that 20 depositions is excessive and that the parties should follow the procedures set forth in Fed. R. Civ. Proc. 30, including the ten deposition limit. This is not an unusually complex case. Freetech is a small company with fewer than ten employees. The depositions of numerous distributors and other members of Freetech's supply chain is nothing more than an attempt to intimidate others who do business with Freetech. Plaintiffs and counter-defendants should be able to obtain all the discovery they legitimately need within the ten deposition limit and other discovery devices. To the extent a legitimate need for additional depositions arises, the parties are free to raise the issue at that time.

3. <u>Timing for Discovery</u>. Plaintiffs propose that fact discovery close May 29, 2009, and expert discovery close October 30, 2009. Freetech proposes that fact discovery close December 19, 2008 and that expert discovery close March 6, 2009. (*See infra* Part XVII.) The parties agree that discovery should not be conducted in phases or be limited to or focused on particular issues.

D. <u>Claims of Privilege & Trial-Preparation Material</u>

Plaintiffs propose that the parties agree to an order regarding claims of privilege or of protection as trial-preparation material asserted after production, as follows: If either party produces a document believed to be protected by privilege or as trial-preparation material, through inadvertence or mistake, the producing party shall have ten (10) days from discovering the production of said document to identify and request the return of such material in writing, without waiving any right to assert privilege or protection as trial-preparation material. Upon receipt of such a written request, the receiving party will have five (5) days to return the documents identified as privileged or trial-preparation material, without waiving its right to later challenge the protection claimed by the producing party.

Freetech agrees in principle with such an arrangement.

The parties plan to request that an agreement of this kind be included in a subsequent Protective Order entered by the Court.

E. <u>Producing Documents & Electronically Stored Information</u>

The parties agree to produce documents, whether originating in electronic or hard copy format, as searchable PDF files or TIFF images, with agreed-on review database load files that delineate document boundaries, on a compact disk, unless either party provides notice that production should occur in an alternate format, and the basis for deviating from the agreed upon form of production. The parties will then confer on the proposed alternative format prior to the production of any material.

Further, when a document is produced as a searchable PDF file, or any other form of static image agreed to by the parties, the producing party shall maintain a separate file as a native file, which will not be modified in any manner that changes the file or meta-data. After a static image

is produced, the party seeking production may request and obtain the native file by demonstrating a particularized need for that production. If the producing party desires to redact any content of a native file for privilege or protection as trial preparation material, then the producing party must clearly indicate the file has been redacted and maintain an original, unmodified file. The production of any document in native format must be done in a manner that preserves the integrity of the file.

F. Protective Order

The parties agree that a protective order governing discovery, including testimony, should be entered. The parties will confer on the details of such an order and file a proposed order for the Court's consideration.

## IX.   CLASS ACTION

This case is not proceeding as a class action.

## X.    RELATED CASES

There are no related federal or state court actions.

## XI.   RELIEF

A. Plaintiffs' Statement

Plaintiffs' calculation of damages is in part dependent on information to be obtained from discovery during the course of this action. Therefore, Plaintiffs have not yet computed damages claimed in this action, but anticipate that their damage model will include, without limitation, the following:

1. Damages for lost subscription and pay-per-view revenue for each "Freetech" receiver used to circumvent Plaintiffs' Security System and ultimately facilitate the unauthorized reception of DISH Network Programming;

2. Damages for research and development costs associated with Plaintiffs' efforts to counter, thwart, and otherwise control Defendant's circumvention of Plaintiffs' Security System;

3. Statutory damages for each violation of the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201(a)(2), (b)(1);

4.     Statutory damages for each violation of the Communications Act of 1934, as amended, 47 U.S.C. §§ 605(a), (e)(4);

5.     Statutory damages for each violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2520(a);

6.     Punitive damages pursuant to the Electronic Communications Privacy Act, 18 U.S.C. § 2520(b)(2), and in equity for unjust enrichment;

7.     Pre- and post-judgment interest on all profits and damages awarded by the Court in accordance with the law or in equity;

8.     An accounting and restitution by Defendant of all gain, profit, and advantage derived from Defendant's unlawful and unfair business acts and practices;

9.     Plaintiffs' costs and reasonable attorneys' fees.

B.     Freetech's Statement

Freetech believes the evidence will show that Plaintiffs are not entitled to any relief. Freetech seeks, through its counterclaims, a declaration that it not liable for the violations Echostar alleges, costs and attorneys fees as appropriate, and other relief as this Court deems fit.

XII.    SETTLEMENT AND ADR

Plaintiffs believe that settlement is unlikely at this stage of the proceedings given the requested relief. Freetech proposed Early Neutral Evaluation ("ENE") and believes ENE would be an important component of this litigation. The parties conferred on prospects for ADR and on February 27, 2008, filed a Notice of Need for ADR Phone Conference.

XIII.   MAGISTRATE JUDGE

Plaintiffs are not willing to submit this matter to a magistrate judge for all purposes, as set forth in the Declination to Proceed Before a Magistrate Judge and Request for Reassignment to a United States District Judge filed on December 6, 2007. Freetech agrees.

XIV.    OTHER REFERENCES

The parties agree that this case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

## XV. NARROWING OF ISSUES

The parties are not presently in a position to address whether it is feasible or desirable to bifurcate issues for trial, or whether it is possible to reduce the length of trial by stipulation, use of summaries, or other expedited means of presenting issues.

## XVI. EXPEDITED SCHEDULE

Plaintiffs' position is that this case is not the type that can be handled on an expedited basis with streamlined procedures.

Freetech believes this case does not pose unusual procedural obstacles and believes the case should move to conclusion as expeditiously as possible.

## XVII. SCHEDULING

The pretrial and trial schedule agreed to by the parties is as follows:

| Pretrial or Trial Event | Plaintiffs' Proposal | Freetech's Proposal |
|---|---|---|
| Exchange Initial Disclosures | March 20, 2008 | Same |
| Amend Pleadings and Join Parties | September 19, 2008 | April 16, 2008 |
| Serve Parties | November 21, 2008 | June 16, 2008 |
| Fact Discovery Closes | May 29, 2009 | December 19, 2008 |
| Disclose Affirmative Experts & Exchange Reports | June 26, 2009 | January 16, 2009 |
| Disclose Rebuttal Experts & Exchange Reports | July 31, 2009 | February 13, 2009 |
| Exchange Supplemental Expert Reports | August 28, 2009 | NA |
| Expert Discovery Closes | October 30, 2009 | March 6, 2009 |
| File Dispositive Motions | December 11, 2009 | March 27, 2009 |
| Final Pretrial Conference | March 19, 2010 | May 11, 2009 |
| File Motions in Limine | April 9, 2010 | May 25, 2009 |
| Trial | April 19, 2010 | June 1, 2009 |

## XVIII. TRIAL

Plaintiffs requested a jury trial of the affirmative claims in this case. Defendant requested

14   JOINT CASE MANAGEMENT STATEMENT

a jury trial of its counterclaims. Plaintiifs anticipate a three week trial. Freetech anticipates that no more than one week would be needed for trial.

### XIX. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

Plaintiffs filed a Certification of Interested Entities or Persons on December 4, 2007. The corporate structure of Plaintiffs has since changed, as reflected in the Amended Certification of Interested Entities or Persons recently filed with the Court. As stated therein, the following non-party entities may be said to have an interest requiring disclosure pursuant to Civil L.R. 3-16: DISH Network Corporation, EchoStar Corporation, and Kudelski SA.

Freetech filed a "Certification of Interested Entities or Persons" on December 27, 2007 as required by Civil Local Rule 3-16 with no interest to report.

### XX. ADDITIONAL MATTERS

The parties do not have any additional matters to raise at this time.

DATED: March 10, 2008

By: /s/ Richard R. Olsen
Richard R. Olsen (*pro hac vice*)
rolsen@twwlaw.com
Timothy M. Frank (*pro hac vice*)
tfrank@twwlaw.com
**T. WADE WELCH & ASSOCIATES**
2401 Fountainview, Suite 700
Houston, Texas 77057
Telephone: (713) 952-4334
Facsimile: (713) 952-4994

Roy K. McDonald (SBN: 193691)
roy.mcdonald@dlapiper.com
Stephen A. Chiari (SBN: 221410)
stephen.chiari@dlapiper.com
**DLA PIPER US LLP**
153 Townsend Street, Suite 800
San Francisco, California 94107-1957
Telephone: (415) 836-2547
Facsimile: (415) 659-7447

Attorneys for Plaintiffs/Counter-defendants

1  DATED: March 10, 2008

2                                        By: /s/
                                              Andrew P. Bridges (SBN: 122761)
3                                             abridges@winston.com
                                              Jennifer A. Golinveaux (SBN: 203056)
4                                             jgolinveaux@winston.com
                                              Matthew A. Scherb (SBN: 237461)
5                                             mscherb@winston.com
                                              **WINSTON & STRAWN LLP**
6                                             101 California Street
                                              San Francisco, California 94111-5894
7                                             Telephone: (415) 591-1000
                                              Facsimile: (415) 591-1400
8

9                                             Jonathan Bae (SBN: 229967)
                                              bae@baelawfirm.com
10                                            **LAW OFFICE OF JONATHAN BAE**
                                              2201 Broadway, Suite M5
11                                            Oakland, California 94612
                                              Telephone: (510) 834-4357
12                                            Facsimile: (510) 663-6731

13                                            Attorneys for Defendant/Counterclaimant
                                              Freetech, Inc.
14

16  JOINT CASE MANAGEMENT STATEMENT

# PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is DLA Piper US LLP, 153 Townsend Street, Suite 800, San Francisco, California 94107-1957. On March 10, 2008, I served the within documents:

**JOINT CASE MANAGEMENT STATEMENT**

☐ by transmitting the document by electronic mail to ADR@cand.uscourts.gov on this date before 5:00 p.m.

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

Jonathan S. Bae, Esq.
2201 Broadway, Suite M5
Oakland, CA 94612
Tel: (510) 834-4357
Fax: (510) 663-6731

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on March 10, 2008, at San Francisco, California.

_Matilda W. Thomas_
MATILDA W. THOMAS

DLA PIPER US LLP
SAN FRANCISCO

SF\3141321.1