Andrew P. Bridges (SBN: 122761)
abridges@winston.com
Jennifer A. Golinveaux (SBN: 203056)
jgolinveaux@winston.com
Matthew A. Scherb (SBN: 237461)
mscherb@winston.com
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111-5894
Telephone:    (415) 591-1000
Facsimile:    (415) 591-1400

Jonathan Bae (SBN: 229967)
bae@baelawfirm.com
LAW OFFICE OF JONATHAN BAE
2201 Broadway, Suite M5
Oakland, CA 94612
Telephone:    (510) 834-4357
Facsimile:    (510) 663-6731

Attorneys for Defendant and Counterclaimant
FREETECH, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| ECHOSTAR SATELLITE L.L.C., ECHOSTAR TECHNOLOGIES CORPORATION, and NAGRASTAR L.L.C.,<br><br>Plaintiffs,<br><br>vs.<br><br>FREETECH, INC. and DOES 1-10,<br><br>Defendants.<br><br>FREETECH, INC.,<br><br>Counterclaimant,<br><br>vs.<br><br>ECHOSTAR SATELLITE L.L.C., ECHOSTAR TECHNOLOGIES CORPORATION, and NAGRASTAR L.L.C.,<br><br>Counter-defendants. | Case No. 07-6124 (JW)<br><br>**FREETECH, INC.'S NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER RE PLAINTIFFS' SUBPOENAS SEEKING THE IDENTITY AND CONTACT INFORMATION FOR EVERY PURCHASER OF FREETECH'S FTA RECEIVERS**<br><br>Date:    September 15, 2008<br>Time:    9:00 a.m.<br>Place:   Courtroom 8, 4th Floor, San Jose |

## NOTICE OF MOTION AND MOTION

TO PLAINTIFFS AND THEIR ATTORNEY OF RECORD:

NOTICE IS HEREBY GIVEN that on September 15, 2008 at 9:00 a.m., or as soon thereafter as counsel may be heard by the above-entitled court, located at 280 First Street, San Jose, California, Courtroom 8, 4th floor, Defendant and Counterclaimant Freetech, Inc. ("Freetech") will and hereby does move the Court for a protective order curtailing overbroad and intrusive third-party discovery seeking the identity and contact information for every purchaser of Freetech's Free-to-Air receivers, that Plaintiffs have sought in 17 subpoenas served on distributors of Freetech's product.

Freetech brings this motion pursuant to Federal Rule of Civil Procedure 26(c) on the grounds that the Court should protect Freetech and purchasers of its product from this intrusive discovery, which bears no reasonable relevance to this case, and which is propounded to harass Freetech and its purchasers. Freetech's motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Jennifer A. Golinveaux filed concurrently, the pleadings and papers on file in this action, and any further material and argument presented to the Court at the time of the hearing.

Counsel for both parties met and conferred regarding the issue raised in this motion but were unable to resolve this dispute.

# TABLE OF CONTENTS

I. STATEMENT OF ISSUES ................................................................................................. 1

II. INTRODUCTION .............................................................................................................. 1

III. FACTUAL BACKGROUND ............................................................................................ 2

IV. ARGUMENT ..................................................................................................................... 4

    A. Legal Standard ....................................................................................................... 4

    B. The July 25 Subpoenas' Harassing and Intrusive Nature Outweighs Any Marginal Relevance. ............................................................................................. 5

        1. The Requested Discovery Does Not Reasonably Target Relevant Information. ................................................................................................ 5

        2. Plaintiffs' July 25 Subpoenas Are Unduly Harassing and Intrusive. ................ 7

        3. Courts Have Either Denied or Severely Restricted Access to User/Purchaser Identifying Information in Copyright Cases, Even When Sought Directly from a Litigant ........................................................ 9

V. CONCLUSION ................................................................................................................. 10

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Abbott Diabetes Care, Inc. v. Roche Diagnostics Corp.,*
No. 05-3117, 2007 U.S. Dist. LEXIS 59135 (N.D. Cal. Aug. 3, 2007) ..................................5

*Dart Indus. Co. v. Westwood Chem. Co.,*
649 F.2d 646 (9th Cir.1980) ...................................................................................................5

*Gonzales v. Google, Inc.,*
234 F.R.D. 674 (N.D. Cal. 2006) ................................................................................5, 8, 10

*In re Ashworth, Inc. Sec. Litig.,*
99-0121, 2002 U.S. Dist. LEXIS 27991 (S.D. Cal. May 10, 2002) .......................................5

*L.G. Philips LCD Co. v. Tatung Co.,*
No. 07-80073, 2007 U.S. Dist. LEXIS 24181 (N.D. Cal. Mar. 20, 2007) .............................5

*Moon v. SCP Pool Corp.,*
232 F.R.D. 633 (C.D. Cal. 2005) ............................................................................................5

*Paramount Pictures Corp. v. ReplayTV, Inc.,*
No. 01-9358 (C.D. Cal. April 5, 2002) .............................................................................9, 10

*Seattle Times Co. v. Rhinehart,*
467 U.S. 20 (1984) ..................................................................................................................4

*Sedaghatpour v. California,*
No. 07-1802, 2007 U.S. Dist. LEXIS 91059 (N.D. Cal. Dec. 3, 2007) ..................................4

*Springbrook Lenders v. Northwestern Nat'l Ins. Co.,*
121 F.R.D. 679 (N.D. Cal. 1988) ............................................................................................4

*United States ex rel. Fisher v. Network Software Assoc.,*
227 F.R.D. 4 (D.D.C. 2005) ....................................................................................................4

*Viacom Int'l Inc. v. Youtube Inc.,*
Nos. 07-2103, 07-3582, 2008 WL 2627388 (S.D.N.Y. July 2, 2008) ....................................7

**STATUTES**

17 U.S.C. § 1201 ..........................................................................................................................6, 7

18 U.S.C § 2710 ................................................................................................................................8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26 ...................................................................................................................*passim*

Fed. R. Civ. P. 45 .................................................................................................................................1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. STATEMENT OF ISSUES

Whether this Court should issue a protective order curtailing overbroad and intrusive third-party discovery seeking the identity of, and contact information for, every purchaser of Freetech's Free-to-Air receivers, which Plaintiffs have sought in 17 subpoenas to distributors of Freetech's product.

### II. INTRODUCTION

This case concerns Plaintiffs' attempts to put Defendant, a small importer of Free-To-Air ("FTA") satellite receivers, out of business. FTA receivers are lawful devices that allow purchasers to view television signals from numerous satellite broadcasters that allow viewers free access to their content.

Plaintiffs make similar receivers, but they also provide satellite broadcasts and charge for access to content. Plaintiffs' receivers contain special security codes that allow authorized subscribers to view Plaintiffs' encrypted television signals for a fee.

In their Complaint, Plaintiffs allege that some of Freetech's FTA receivers have been modified with third-party software to allow them to receive and decode Plaintiffs' encrypted signals. Plaintiffs wish to hold Freetech liable for distributing FTA receivers that others may adapt for wrongful purposes. Plaintiffs also allege, upon information and belief but without any apparent basis, that Freetech facilitates distribution of "hacks" to enable improper use of its receivers.

Plaintiffs have acknowledged that there is nothing unlawful about FTA programming. FTA programming is a lawful alternative to paid satellite programming. Plaintiffs' affiliates even distribute FTA receivers themselves.

This motion concerns a series of highly intrusive subpoenas served on distributors of Freetech's FTA receivers. Plaintiffs previously served very broad discovery on Freetech itself and also served Rule 45 subpoenas on 27 distributors of Freetech's FTA receivers, seeking documents about the alleged piracy and illegal third-party software, and seeking to inspect copies of third-party software and any of Freetech's devices that have been hacked to receive Plaintiffs' subscription programming (the "July 16 Subpoenas"). Freetech did not object to the first round of subpoenas to

1  third parties.

2  Then, on July 25, 2008, Plaintiffs served new subpoenas on 17 of the distributors, demanding each to produce documents that identify, by name, contact information, and items bought, <u>every</u> person who has ever purchased one of Freetech's FTA receivers (the "July 25 Subpoenas"). With this wave of subpoenas, Plaintiffs crossed the line. Any marginal relevance of such intrusive and overbroad discovery is outweighed by the damage that will be done to Freetech's business by allowing Plaintiffs unfettered access to every purchaser of Freetech's lawful FTA receivers, as well as to the privacy interests of those purchasers.

Plaintiffs' attorneys have baldly expressed Plaintiffs' desire to put Freetech out of business. The first wave of subpoenas were overbroad, intrusive, and aggressive and aimed at putting pressure on distributors for doing business with Freetech. But the new wave of subpoenas on July 25 seeking the identity of all purchasers of receivers regardless of any modification is a bold tactic for harassment, as lawful purchasers may well shrink from buying a product if they believe their ownership of the products may become a matter of interest in Federal litigation.

If Plaintiffs wish to detect unlawful use of products, they should focus their efforts on the hacks in the marketplace and persons who have obtained the hacks that pervert Freetech's lawful FTA receivers, not on those who purchase Freetech's FTA receivers and do not obtain hacks.

Freetech therefore requests that the Court enter a protective order under Rule 26(c), curtailing the discovery sought in Plaintiffs' July 25th subpoenas.[1]

### III. FACTUAL BACKGROUND

FTA receivers have been available to consumers for decades. (Counterclaims ¶ 5.) FTA receivers simply allow consumers to receive legitimate, unencrypted, public satellite broadcasts and to display these broadcasts on their televisions. *Id.* ¶¶ 4, 8. Their use has become widespread. In 2004, sales of satellite receivers for FTA signal reception were expected to outpace, for a second year in a row, sales of satellite receivers tied to subscription service providers, 36 million to 29 million. Data from mid-2007 show that some 30 to 40 million people in Europe alone are getting

---

[1] The return date on Plaintiffs' July 25, 2008 Subpoenas was August 25, 2008. Plaintiffs have agreed to extend the return date to ten days following the Court's ruling on Freetech's motion for protective order. (Golinveaux Decl., ¶ __.)

their television from FTA satellite transmissions. *Id.* ¶ 15. In fact, it appears that a company related to Plaintiffs also sells FTA receivers. The website of Echostar Europe, an Echostar affiliate, touts that it has sold "millions of receivers for . . . Free to Air markets" and is "Powering the free-to-air revolution." *Id.* ¶ 6.

Plaintiffs' Complaint, filed on December 4, 2007, alleges that Freetech's importation, distribution, or use of FTA receivers is unlawful under the Digital Millennium Copyright Act and other state and federal laws. It alleges that Freetech's FTA receivers are primarily designed for unlawful purposes. These allegations are baseless. Freetech's FTA receivers (branded as Coolsat receivers) are designed for lawful purposes, and Freetech has not imported, marketed, or used the receivers for unlawful purposes. *Id.* ¶¶ 22, 32. Notably, Plaintiffs have not alleged that Freetech's FTA receivers are themselves capable of descrambling Plaintiffs' encrypted signals, but rather that the "FTA Receivers **and corresponding Pirate Software**" allow users to descrambler the signals. (Compl. ¶ 47 (emphasis added).)

Early in the case, Plaintiffs' counsel explained to Freetech's counsel that Plaintiffs' goal was to put Freetech "out of business." Declaration of Jennifer A. Golinveaux ("Golinveaux Decl."), ¶ 2.)

In this context, on July 16, 2008, Plaintiff and Counter-defendant Echostar Satellite L.L.C. (now known as DISH Network L.L.C.), Echostar Technologies Corporation (now known as EchoStar Technologies L.L.C.), and Nagrastar L.L.C., served a first wave of identical subpoenas on 27 alleged distributors of Freetech's FTA devices (the "July 16 Subpoenas"). These subpoenas sought production of 14 categories of documents and things, including "all documents concerning Satellite Television Piracy," "all documents concerning EchoStar's Conditional Access System," "all documents concerning Third Party Software," and "all documents concerning the capability of Coolsat Receivers to receive DISH Network Programming." The July 16 Subpoenas also demanded "copies of all Third Party Software" and "all Coolsat Receivers that are capable of receiving DISH Network Programming." (Golinveaux Decl. ¶ 3 & Exh. A ) (representative July 16 Subpoena). Freetech has not sought protection with respect to those subpoenas.

A week later, on July 25, 2008, Plaintiffs served a second wave of 17 additional subpoenas on distributors of Freetech's FTA receivers (the "July 25 Subpoenas") with the following new

3

demand for:

> Documents sufficient to identify each Person who purchased or otherwise obtained a Coolsat Receiver or Receivers from You during the period January 1, 2003 to June 30, 2008, including each Person's name, address, phone number, and email address, and the purchase date, purchase price, purchase quantity, and model number for each Receiver.

(Golinveaux Decl. ¶ 4 & Exh. B (representative July 25 Subpoena).)

During the meet and confer process, Plaintiffs' counsel asserted that Plaintiffs need this information in order to contact and survey purchasers of Freetech's receivers regarding how they use the receivers. (Golinveaux Decl. ¶ 5.) As explained below, it is unclear how such a survey is relevant to Plaintiffs' claims against Freetech. In any event, any marginal relevance cannot possibly justify the violation of purchasers' privacy and the harm to Freetech's business that will undoubtedly occur from allowing Plaintiffs' access to the identities of every purchaser of a Freetech FTA receiver.

## IV.   ARGUMENT

### A.   Legal Standard

"[A] court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). The order, which a party should seek in the court where the action is pending, may forbid certain discovery or specify terms on which discovery can be had. *Id.* Within Rule 26's framework, courts have broad discretion to fashion appropriate protective orders. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) ("Rule 26(c) confers broad discretion" to the court to decide what degree of protection is required, and a court has "substantial latitude" to decide the proper scope of a protective order). Protective orders may properly prevent discovery into irrelevant matters. *United States ex rel. Fisher v. Network Software Assoc.*, 227 F.R.D. 4, 7 n.1 (D.D.C. 2005); *cf. Sedaghatpour v. California*, No. 07-1802, 2007 U.S. Dist. LEXIS 91059, at *2 (N.D. Cal. Dec. 3, 2007) ("The subpoena nonetheless is subject to the relevance provisions of FRCP 26(b)(1).").

Parties to litigation have standing under Rule 26 to challenge subpoenas issued by adversaries to third parties. *Springbrook Lenders v. Northwestern Nat'l Ins. Co.*, 121 F.R.D. 679, 680 (N.D. Cal. 1988) (noting "Northwestern does have standing to object to Springbrook's subpoena of a third party" and granting motion); *see also Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D.

Cal. 2005) ("A party cannot object to a subpoena duces tecum served on a nonparty, but rather, must seek a protective order or make a motion to quash."); *Abbott Diabetes Care, Inc. v. Roche Diagnostics Corp.*, No. 05-3117, 2007 U.S. Dist. LEXIS 59135, at *8 (N.D. Cal. Aug. 3, 2007) (granting non-party's motion to quash); *L.G. Philips LCD Co. v. Tatung Co.*, No. 07-80073, 2007 U.S. Dist. LEXIS 24181, at *5 (N.D. Cal. Mar. 20, 2007) ("As a threshold matter, the Court holds that Tatung does have standing to challenge the Subpoena through a Rule 26(c) motion."); *In re Ashworth, Inc. Sec. Litig.*, 99-0121, 2002 U.S. Dist. LEXIS 27991, at *4 (S.D. Cal. May 10, 2002).

When discovery takes place through third-party subpoenas, protective orders should issue more liberally. As this Court has previously noted, "the word 'non-party' serves as a constant reminder of the reasons for the limitations that characterize 'third-party' discovery." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679-80 (N.D. Cal. 2006) (citing *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir.1980)) (citations and internal quotes omitted).

### B. The July 25 Subpoenas' Harassing and Intrusive Nature Outweighs Any Marginal Relevance.

While it unclear how surveying each and every purchaser of Freetech's FTA receivers is relevant to Plaintiffs' claims, it is perfectly clear that allowing Plaintiffs unfettered access to the identities and contact information of all such purchasers intrudes upon the privacy interests of such individuals and will undoubtedly chill the market for Freetech's lawful product.

#### 1. The Requested Discovery Does Not Reasonably Target Relevant Information.

Plaintiffs' July 25 Subpoenas ask 17 distributors to produce:

> Documents sufficient to identify each Person who purchased or otherwise obtained a Coolsat Receiver or Receivers from You during the period January 1, 2003 to June 30, 2008, including each Person's name, address, phone number, and email address, and the purchase date, purchase price, purchase quantity, and model number for each Receiver.

Thus, Plaintiffs are after the identities of, and contact information for, every purchaser of Freetech's FTA receivers. This discovery does not reasonably target information that is relevant to Plaintiffs' allegations against Freetech.

During the meet and confer process, Plaintiffs claimed that "customer information is

necessary for Plaintiffs to conduct a survey analysis on the issue of whether Defendant's FTA receivers are primarily being used for the piracy of Plaintiffs' DISH Network satellite signal – as opposed to receiving and viewing purely free-to-air television programming." (Golinveaux Decl. ¶ 5.) But such a survey is not reasonably relevant.

Plaintiffs have asserted claims under sections 1201(a)(2) and 1201(b)(1) of the Digital Millennium Copyright Act ("DMCA")[2]. Both sections prohibit the import, offer to the public, or other trafficking "in any technology, product, service, device, component, or part thereof, that . . . (B) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected under this title" or "to circumvent protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof." 17 U.S.C. §§ 1201(a)(2)(B), (b)(1)(B).

It is apparent from Plaintiffs' Complaint that Coolsat and other FTA receivers, without modification, are not the problem. It is only devices that are loaded with unlawful third-party software that are capable of hacking Plaintiffs' encrypted signals. Plaintiffs specifically state that FTA receivers themselves do not contain the components and software necessary to access DISH Network programming. Plaintiffs admit that "[w]hile FTA Receivers contain many of the same components found in an ECHOSTAR set-top box, *the units cannot descramble and receive DISH Network Programming* without utilizing the security keys and technology codes found in the Nagra Software (i.e. ROM code segment, EEPROM code segment)." (Compl. ¶ 29 (emphasis added).) Thus, Plaintiffs state it is the "FTA Receivers *and* corresponding Pirate Software" that gives rise to the alleged DMCA violations. (Compl. ¶ 47 (emphasis added).)

With the July 25 Subpoenas, Plaintiffs are demanding contact information for every purchaser of a Coolsat receiver, yet Plaintiffs' claims are directed at the purpose and use of the Coolsat receivers distributed by Defendant, not how they may be used by third parties who may have loaded them with allegedly illegal hacking software. Plaintiffs' earlier subpoena requests – which

---

[2] Plaintiffs have also asserted claims for violations of the Communication Act, Electronic Communications Privacy Act, and California state laws but they did not assert that this discovery is relevant to those claims, and it does not appear to be.

6

seek "all documents concerning third party software," "all copies of third party software," and "all Coolsat Receivers that are capable of receiving DISH Network Programming" – would reveal whether Freetech's Coolsat receivers were distributed to purchasers with third-party software and whether Freetech had any involvement in this practice. Until these facts are established, there is absolutely no basis for allowing scattershot access to every purchaser of the receivers.

No authority concerning claims brought for violation of Section 1201 has allowed a plaintiff unfettered access to purchaser or user information. During the meet and confer process Plaintiffs' counsel was unable to point to a single case involving the claims asserted in this case in which the court allowed similar discovery. In fact, some of the cases Plaintiffs did point to illustrate precisely the problem with authorizing the discovery Plaintiffs seek. For example, Plaintiffs pointed to a recent decision, *Viacom Int'l Inc. v. Youtube Inc.*, Nos. 07-2103, 07-3582, 2008 WL 2627388 (S.D.N.Y. July 2, 2008). The *Viacom* decision had nothing to do with a right to obtain the identities of alleged direct infringers; rather, it ordered production of a log showing the number of time users viewed particular videos on Youtube. Moreover, shortly after the decision, in the wake of overwhelming public outcry about the possibility of Viacom using the log to locate identifying information about the viewers, Viacom and Youtube agreed that any user logs turned over to Viacom would be purged of identifying information. (Golinveaux Decl. ¶ 7 & Exh. C.)

### 2. Plaintiffs' July 25 Subpoenas Are Unduly Harassing and Intrusive.

Even if Plaintiffs could articulate some theory of marginal relevance for purchaser identities, Plaintiffs should not be allowed unfettered access to all purchasers of Freetech's FTA receivers.

Harassment, annoyance, and oppression have been Plaintiffs' goals from the start of this case. Plaintiffs' latest round of 17 subpoenas seeking customer information crosses the line. The subpoenas aim at torpedoing business relations among Freetech, its distributors, and end users. The request for customer information is particularly harassing given, as discussed above, the complete lack of evidence that any distributors provide Coolsat receivers with third-party hacking software to purchasers.

Plaintiffs' request also invades purchasers' privacy. This invasion harms not only purchasers but also the distributors who sell to them, and, in turn, Freetech. Plaintiffs can offer no compelling

reason to contact all purchasers of Freetech's FTA receivers. This is similar to the scenario in *Gonzales v. Google, Inc.*, 234 F.R.D. 674 (N.D. Cal. 2006), in which this Court denied the government access to the search logs it sought via subpoena. Google argued that producing user queries to the government would result in a loss of user trust and a loss of users. 234 F.R.D. at 683. Although the court noted that Google's own privacy policy does not guarantee that queries will be protected, users likely do expect some privacy in their searches. *Id.* at 683-84. The court concluded that although "the expectation of privacy by some Google users may not be reasonable, [it] may nonetheless have an appreciable impact on the way in which Google is perceived, and consequently the frequency with which users use Google." *Id.* at 684. "Such an expectation does not rise to the level of an absolute privilege, but does indicate that there is a potential burden as to Google's loss of goodwill if Google is forced to disclose search queries to the government." *Id.* Thus, this was a basis to deny the government demand for search logs. *Id.*

Moreover, in *Gonzalez* this Court raised, on its own initiative, the privacy interest of Google users themselves. *Id.* at 687. It noted that "considerations of the public interest, the need for confidentiality, and privacy interests are relevant factors to be balanced in a Rule 26(c) determination regarding the subpoena of documents." *Id.* (internal quotations omitted). Although the Court did not have to specifically reach a conclusion on the privacy issue in the Google case because it denied the discovery that could have revealed individual user identities based upon other factors, *id.* at 687-88, the Court here should consider the privacy of end users and recognize that granting Plaintiffs the discovery they demand would result in a gross invasion of purchasers' privacy, including regarding their viewing habits, simply for purchasing a FTA receiver.

Congress itself has recognized a strong privacy interest in consumers' viewing habits. Congress passed the Video Privacy Protection Act, 18 U.S.C § 2710, after a controversy that arose when Judge Robert Bork's video rental records surfaced during his Supreme Court nomination hearings. The statute prohibits a video rental store from disclosing the videos a person rents or purchases and provides aggrieved consumers with a private right of action. Some FTA broadcasts include political and out-of-the-mainstream programming. For example, viewers can obtain broadcasts from Al Jazeera and the Chinese government. While the Video Privacy Protection Act is

8

not applicable to Freetech's consumers in this case, it suggests caution and respect for consumers' privacy.

### 3. Courts Have Either Denied or Severely Restricted Access to User/Purchaser Identifying Information in Copyright Cases, Even When Sought Directly from a Litigant

Courts are cautious about allowing such discovery even when a party is asked to identify its own users. For example, in copyright litigation over the legality of the ReplayTV digital video recorder, content owners wanted Defendants to identify through responses to document requests and interrogatories, every person who had ever received or had been sold a ReplayTV so that Plaintiffs could "gather information about how Defendants' customers use the ReplayTV 4000." Joint Stipulation for Plaintiffs' Motion to Compel at 62, *Paramount Pictures Corp. v. ReplayTV, Inc.*, No. 01-9358 (C.D. Cal. April 5, 2002), *available at* http://www.eff.org/files/filenode/Paramount_v_ReplayTV/20020405_replay_3d_jnt_Stip.pdf. The court denied this discovery as propounded. It refused to order production of documents responsive to the document request which sought "all Documents relating to, regarding, referring to, or reflecting any order for purchase of a ReplayTV 4000 . . . or any sale." *Id.*; *Paramount Pictures Corp. v. ReplayTV, Inc.*, No. 01-9358 (C.D. Cal. April 26, 2002), *available at* http://www.eff.org/files/filenode/Paramount_v_ReplayTV/20020426_order.pdf.

In addition, with respect to a similarly intrusive and overbroad request – seeking "[a]ny and all Documents relating to, regarding, referring to, or reflecting the identity of any Person (whether employed by Defendant or otherwise) who has been provided access to, or use of, the ReplayTV 4000 for any purpose" – the court narrowed the discovery of the identities of individual who had been provided access to the ReplayTV 4000 "for purposes of testing, sampling, reviewing, advertising, promoting, or evaluating [its] features or functions." *Paramount Pictures Corp. v. ReplayTV, Inc.*, No. 01-9358 (C.D. Cal. April 26, 2002), *available at* http://www.eff.org/files/filenode/Paramount_v_ReplayTV/20020426_order.pdf. Thus, the court refused to require ReplayTV to turn over customer lists or identify those to whom it sold the ReplayTV 4000.

Similarly here, it would be highly inappropriate to allow Plaintiffs unfettered access to every

9

purchaser of Freetech's FTA receivers, particularly before Plaintiffs have presented *any* evidence that the receivers *as distributed* are capable of intercepting Plaintiffs' encrypted signals. Moreover, unlike the *ReplayTV* case, this case involves the propriety of discovery from non-parties, which calls for more careful restrictions. *See Google*, 234 F.R.D. at 679-80.

## V.  CONCLUSION

Plaintiffs' highly intrusive July 25 Subpoenas to 17 distributors seeking identifying information about every purchaser of Freetech's FTA receivers seeks irrelevant information, invades users' privacy, and will undermine purchaser's expectations of privacy, and has the potential to savage Freetech's business by scaring away lawful purchasers of such devices who do not wish to inject themselves into litigation. Freetech respectfully requests that the Court issue a protective order denying Plaintiffs access to the information sought in their July 25 Subpoenas and enjoining them from pursuing or enforcing the subpoenas.

Dated: August 11, 2008

Respectfully submitted,

WINSTON & STRAWN LLP

By:   /s/_____
Andrew P. Bridges
Jennifer A. Golinveaux
Matthew A. Scherb