Chad M. Hagan (*pro hac vice*)
chagan@twwlaw.com
Timothy M. Frank (*pro hac vice*)
tfrank@twwlaw.com
**T. WADE WELCH & ASSOCIATES**
2401 Fountainview, Suite 700
Houston, Texas 77057
Telephone: (713) 952-4334
Facsimile: (713) 952-4994

Roy K. McDonald (State Bar No. 193691)
roy.mcdonald@dlapiper.com
Stephen A. Chiari (State Bar No. 221410)
stephen.chiari@dlapiper.com
**DLA PIPER US LLP**
153 Townsend Street, Suite 800
San Francisco, California 94107-1957
Telephone: (415) 836-2547
Facsimile: (415) 659-7447

Attorneys for Plaintiffs/Counter-defendants

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| ECHOSTAR SATELLITE L.L.C. et al., <br><br> Plaintiffs, <br><br> v. <br><br> FREETECH, INC. and DOES 1-10, <br><br> Defendants. <br><br>———————————————— <br><br> FREETECH, INC., <br><br> Counterclaimant, <br><br> v. <br><br> ECHOSTAR SATELLITE L.L.C. et al., <br><br> Counter-defendants. | Case No. CV-07-6124 (JW) <br><br> **ECHOSTAR SATELLITE L.L.C.'S RESPONSE TO FREETECH'S MOTION FOR PROTECTIVE ORDER** <br><br> Date: September 15, 2008 <br> Time: 9:00 a.m. <br> Place: Courtroom 8, 4th Floor, San Jose |

# TABLE OF CONTENTS

I.   STATEMENT OF ISSUES ................................................................................................ 1

II.  INTRODUCTION ............................................................................................................. 1

III. LEGAL STANDARD ....................................................................................................... 2

IV.  ARGUMENT .................................................................................................................... 3

   A.  The Subpoenaed Information is Relevant to the Claims and Defenses in the Litigation ............................................................................................................... 3

     (1)  Customer Lists and Contact Information Are Relevant to EchoStar's Claims ... 4

     (2)  Customer Lists and Contact Information Are Relevant to Rebut Freetech's Counterclaims and Defenses ................................................................................. 5

     (3)  The Discovery of Customer Lists and Contact Information Is Commonly Allowed ................................................................................................................ 6

   B.  The Subpoenas Are Not Harassing, Annoying, or Oppressive ....................................... 9

   C.  Freetech's Privacy Concerns Do Not Support Denying EchoStar's Request of Customer Lists and Contact Information ................................................................. 10

   D.  Any Alleged Privacy Concerns Can Be Adequately Protected By Designation of the Evidence as Confidential Under a Protective Order .................................................. 13

V.   CONCLUSION & PRAYER ........................................................................................... 13

...

# TABLE OF AUTHORITIES

**CASES**

*Atmel Corp. v. St. Paul Fire & Marine*, No. C 04-04082 SI, 2005 WL 3692874 (N.D. Cal. Aug. 31, 2005) ................................................................................................. 6

*Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470 (9th Cir. 1992) ..................................... 2, 10

*Chesa Int'l., Ltd. v. Fashion Assocs., Inc.*, 425 F.Supp. 234 (S.D.N.Y. 1977) ............................ 7

*Degen v. U.S.*, 517 U.S. 820, 116 S.Ct. 1777 (1996) .................................................................. 3

*Electromatic (PTY) Ltd. v. Rad-O-Lite of Philadelphia, Inc.*, 90 F.R.D. 182 (E.D. Pa. 1981) ..................................................................................................................... 7

*Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122 (9th Cir. 2003) .................................. 10

*Geophysical Sys. Corp. v. Raytheon Co. Inc.*, 117 F.R.D. 646 (C.D. Cal.1987) ..................... 6, 7

*Gonzalez v. Google, Inc.*, 234 F.R.D. 674 (N.D. Cal. 2006) ................................... 3, 10, 11, 12

*N.L.R.B. v. Cable Car Advertisers, Inc.*, 319 F.Supp. 2d 991 (N.D. Cal. 2004) ......................... 6

*Nalco Chemical Co. v. Hydro Techs., Inc.*, 149 F.R.D. 686 (E.D. Wis. 1993) ........................... 7

*Nutratech, Inc. v. Syntech (SSPF) Int'l., Inc.*, 242 F.R.D. 552 (C.D. Cal. 2007) ........................ 6

*Paramount Pictures Corp. v. Replay TV*, CV 01-9358 2002 WL 32151632 (C.D. Cal. May 30, 2002) .............................................................................................. 12

*Phillips ex rel. Estates of Byrd v. Gen Motors Corp.*, 307 F.3d 1206 (9th Cir. 2002) ................................................................................................................... 2

*Shoen v. Shoen*, 5 F.3d 1289 (9th Cir. 1993) ............................................................................. 2

*Sony Computer Entm't Am., Inc. v. NASA Elecs. Corp.*, 249 F.R.D. 378 (S.D. Fla., February 12, 2008) ................................................................................................ 2, 6

*Turmenne v. White Consol. Indus., Inc.*, 266 F.Supp. 35 (D. Mass. 1967) ............................ 6, 7

*Viacom Int'l Inc. v. Youtube Inc.*, Nos. 07-2103, 07-3582, 2008 WL 2627388
   (S.D.N.Y. July 2, 2008) .................................................................................................. 8, 9

*VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472 (9th Cir. 1986) ................ 6, 7

**STATUTES**

17 U.S.C. § 1201 ......................................................................................................................3, 4, 5

47 U.S.C. § 605 .......................................................................................................................3, 4, 5, 6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26 ................................................................................................................2, 3, 9, 10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. STATEMENT OF ISSUES

Whether this Court should issue a protective order prohibiting EchoStar from prosecuting its case or rebutting Freetech's defenses and counterclaims when the evidence sought is clearly relevant and discoverable.

## II. INTRODUCTION

EchoStar is in the business of providing copyrighted pay-TV programming via satellite broadcast to its more than 13 million authorized subscribers across the U.S. This programming comes from content providers such as HBO, ABC, CNBC, CNN, ESPN, subscribers' local network channels, pay-per-view programming, and hundreds of other content providers. To protect this programming from unauthorized access (i.e., satellite piracy), EchoStar encrypts its DISH Network satellite signals with technology provided by Plaintiff NagraStar. Authorized subscribers of DISH Network are provided a satellite dish and receiver (or set-top box) which grants them access to decrypt only the copyrighted programming included in that subscriber's authorized programming package. EchoStar expends millions of dollars and other substantial resources to protect its signal from satellite piracy—a problem that costs Plaintiffs tens of millions of dollars annually.

Defendants are in the business of selling so called free-to-air ("FTA") receivers which are primarily designed, marketed, and used for the piracy of EchoStar's DISH Network programming. Defendants distribute these FTA receivers through a network of authorized dealers. On July 25, 2008, EchoStar issued subpoenas to these dealers seeking customer lists and contact information, limited to the period of January 1, 2003 to June 30, 2008, helpful toward conducting discovery to assist EchoStar in prosecuting its claims against Defendants. Defendants' current Motion for Protective Order ("MPO") not only seeks to obstruct EchoStar's discovery efforts, but also seeks to limit EchoStar's ability to defend against Defendants' counterclaims and defenses. In other words, Defendants hope to use their MPO as a shield and a sword—a shield to obstruct EchoStar's discovery efforts and a sword by alleging defenses and

counterclaims to which the same discovery efforts are related to rebutting.

As set forth more fully below, these customer lists and contact information are directly relevant to key elements of EchoStar's claims. This evidence is also relevant to enable EchoStar to defend against Freetech's defenses and counterclaims. Accordingly, this evidence falls squarely within the ambit of Rule 26 and the broad, liberal standard for permissible discovery that is reasonably calculated to lead to the discovery of admissible evidence. Furthermore, Defendants' tenuous privacy concerns do not support denying EchoStar's request - - otherwise litigants would always be capable of raising weak, illusive privacy concerns to eliminate opposing litigants' ability to discover relevant evidence. For these reasons, and those set forth more fully below, Defendants' motion to prevent EchoStar from obtaining this relevant evidence should be denied.

### III.     LEGAL STANDARD

Motions for Protective Order, like the one urged by Freetech here, should not be used as both a shield and a sword—a shield to obstruct a party's discovery efforts and a sword by alleging defenses and counterclaims to which the same discovery efforts are related to rebutting. *See Sony Computer Entm't Am., Inc. v. NASA Elecs. Corp.*, 249 F.R.D. 378, 384-85 (S.D. Fla., February 12, 2008) ("[Plaintiff] is correct that Defendants should not be permitted to use a protective order as both a sword and a shield, by resting their defenses on third parties and then restricting [Plaintiff]'s efforts to test their defenses by examining those parties."). "Litigants have a right to every man's evidence and that wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) (internal quotations omitted). The party seeking protection bears a high burden and must show specific prejudice or harm if no protective order is granted. *See Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211-12 (9th Cir. 2002). To meet its burden, the movant must offer more than "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning." *Id; Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992). As demonstrated below, Freetech fails to meet its burden and, in fact, has no legal or factual bases to prevent EchoStar from obtaining the discovery sought.

## IV. ARGUMENT

### A. The Subpoenaed Information is Relevant to the Claims and Defenses in the Litigation

A party may discover any nonprivileged matter that is relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1). Relevant information must merely be reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1); *Degen v. U.S.*, 517 U.S. 820, 825-26, 116 S.Ct. 1777, 1782 (1996). Moreover, "[t]his requirement is liberally construed to permit the discovery of information which ultimately may not be admissible at trial." *Gonzalez v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006).

EchoStar alleges Freetech was and is actively engaged in the business of manufacturing, importing to the public, providing, or otherwise trafficking in the sale of illegal pirate devices, components, and technology in violation of federal law including the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. §§ 1201(a)(2) and 1201(b)(1), and the Communications Act, 47 U.S.C. § 605(e). (Compl. ¶¶ 46, 58.) EchoStar further alleges Freetech directly and/or in concert with others provided assistance to intercept and/or receive DISH Network's encrypted satellite signals. *See* 47 U.S.C. § 605(a). (Compl. ¶ 53.)

To support EchoStar's discovery of relevant evidence, subpoenas were served on third parties seeking: "Documents sufficient to identify each Person who purchased or otherwise obtained a Coolsat Receiver or Receivers from You during the period January 1, 2003 to June 30, 2008, including each Person's name, address, phone number, and email address, and the purchase date, purchase price, purchase quantity, and model number for each Receiver." (Declaration of Chad M. Hagan ("Hagan Decl."), ¶ 2). This request was designed to obtain information to show the number of Coolsat receivers sold and provide EchoStar contact information it may use to determine the extent of piracy committed using Coolsat receivers.[1]

///

///

---

[1] Freetech alleges EchoStar wants to pry into the viewing habits of Coolsat users. EchoStar is not interested in the viewing habits of Coolsat receiver users except insofar as viewing habits are necessary to determine the existence of piracy.

(1) <u>Customer Lists and Contact Information Are Relevant to EchoStar's Claims</u>

### (a) *Digital Millennium Copyright Act: 17 U.S.C. § 1201*

The DMCA expressly protects against products that 1) are "primarily designed or produced for the purpose of circumventing" an access control system; 2) have "only limited commercially significant purpose or use other than to circumvent" an access control system; or 3) are "marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing" an access control system. *See* 17 U.S.C. §§ 1201(a)(2) and 1201(b)(1).

EchoStar's requests for customer lists and contact information are reasonably calculated to discover evidence relevant to determine: 1) the consumer uses of Coolsat receivers; and 2) the extent to which Freetech and/or those acting in concert with Freetech marketed Coolsat receivers specifically for the piracy of DISH Network's satellite signals.

The extent of piracy and actual consumer uses of Coolsat receivers may provide evidence of the fact Coolsat receivers have a limited commercially significant purpose or use other than to circumvent DISH Network's access control system. *See* 17 U.S.C. §§ 1201(a)(2)(B) and 1201(b)(1)(B). Moreover, it may provide evidence that Coolsat receivers were specifically designed to circumvent DISH Network's access control system. *See* 17 U.S.C. §§ 1201(a)(2)(A) and 1201(b)(1)(A). The fact Coolsat receivers were marketed specifically for the piracy of DISH Network's satellite signals may show that Freetech had knowledge that Coolsat receivers are primarily used to circumvent DISH Network's access control system. *See* DMCA 17 U.S.C. §§ 1201(a)(2)(C) and 1201(b)(1)(C).

### (b) *Communications Act: 47 U.S.C. § 605*

The Communications Act protects against assisting others to intercept and/or receive encrypted satellite signals. 47 U.S.C. § 605(a). It further protects against persons designing, manufacturing, selling or otherwise distributing devices while "knowing or having reason to know" that the devices are *primarily used* to decrypt "direct-to-home satellite services." 47 U.S.C. § 605(e)(4).

EchoStar's requests for customer lists and contact information are reasonably calculated to discover evidence relevant to determine: 1) to what extent Freetech provided Coolsat users assistance to intercept and/or receive encrypted satellite signals; 2) the extent to which Freetech and/or those acting in concert with Freetech marketed Coolsat receivers specifically for the piracy of DISH Network's satellite signals; and 3) the consumer uses of Coolsat receivers.

Freetech's assistance to Coolsat users on how to intercept and/or receive DISH Network's encrypted satellite signals is expressly prohibited by the Communications Act, and the only presently known source of this information is Coolsat receiver purchasers. *See* 47 U.S.C. § 605(a). Moreover, such assistance may provide evidence that Freetech had knowledge that Coolsat receivers are primarily used to decrypt DISH Network's satellite signals. *See* 47 U.S.C. § 605(e)(4). Freetech's marketing efforts may provide evidence that Freetech was providing assistance to intercept and/or receive DISH Network's satellite signals and provide further evidence that Freetech had knowledge that its Coolsat receivers were primarily used to decrypt DISH Network's satellite signals. *See* 47 U.S.C. § 605(a) & 605(e)(4). The extent of piracy and actual consumer uses of Coolsat receivers may provide evidence of the fact Coolsat receivers' *primary use* is the decryption of DISH Network's satellite signals. *See* 47 U.S.C. § 605(e)(4).

### (2) Customer Lists and Contact Information Are Relevant to Rebut Freetech's Counterclaims and Defenses

More importantly, Freetech has pled several defenses and counterclaims which permit the requested discovery. (DEFENDANT FREETECH, INC.'S AMENDED ANSWER AND COUNTERCLAIMS ("Am. Answer")). For example, within its Counterclaims, Freetech alleges "[i]t is not the case that Coolsat satellite receivers have only limited commercially significant purpose or use other than to circumvent" DISH Network's access control system. (Am. Answer at 12, ¶¶ 43-44). Freetech further alleges it "could not know or have reason to know that Coolsat receivers are primarily of assistance" in circumventing DISH Network's access control system. (Am. Answer at 12, ¶ 47). In addition, Freetech seeks declaratory judgments on all of EchoStar's claims. (Am. Answer at 13-15, ¶¶ 51-68).

Freetech specifically denied several of EchoStar's allegations. For example, Freetech denied having any "knowledge that the devices, components, and technology are used to circumvent" DISH Network's access control system as required by DMCA §§ 1201(a)(2) and 1201(b)(1). (Am. Answer at 5, ¶ 47). Freetech denied it had knowledge or even reason to know that Coolsat receivers "are used primarily to assist in the unauthorized interception and decryption of" DISH Network's satellite signals as required by the Communications Act, 47 U.S.C. § 605(a). (Am. Answer at 5, ¶ 54). Freetech further denied knowing that its Coolsat receivers "were and are used primarily to assist in the unauthorized interception and decryption of direct-to-home satellite services in violation of" the Communications Act, 47 U.S.C. § 605(e)(4). (Am. Answer at 5, ¶ 59). These facts are in issue thus EchoStar must be able to discover evidence to disprove them.

Not only does Freetech hope to shield relevant evidence from EchoStar, but Freetech also clearly hopes to use this same tactic as a sword by alleging defenses and counterclaims to which the same discovery efforts are related to rebutting. *See Sony Computer Entm't Am., Inc. v. NASA Elecs. Corp.*, 249 F.R.D. 378, 384-85 (S.D. Fla., February 12, 2008) ("Defendants should not be permitted to use a protective order as both a sword and a shield, by resting their defenses on third parties and then restricting [Plaintiff]'s efforts to test their defenses by examining those parties."). Such tactics should not be countenanced.

### (3) The Discovery of Customer Lists and Contact Information Is Commonly Allowed

Freetech incorrectly alleges there is no case law in support of EchoStar's request for customer lists and contact information. (MPO at 7). However, there are an overwhelming number of cases from decades of sound jurisprudence directly supporting EchoStar's request for this information.[2]

---

[2] *See, e.g., VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472 (9th Cir. 1986) (holding district court abused its discretion by not allowing discovery of the defendant's mailing and customer lists when the most probative source of evidence were those on the defendant's mailing and customer lists); *Geophysical Sys. Corp. v. Raytheon Co. Inc.*, 117 F.R.D. 646, 649 (C.D. Cal.1987) (ordering disclosure of defendant's customer lists subject to protective order); *Turmenne v. White Consol. Indus., Inc.*, 266 F.Supp. 35 (D. Mass. 1967) (plaintiff was entitled to discovery of customer lists in order to contact defendant's customers to discover evidence regarding defendant's marketing efforts to customers);

In *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, Plaintiff sued Defendant for trademark infringement. 784 F.2d 1472 (9th Cir. 1986). Plaintiff alleged public confusion regarding Defendant's trademark and sought to question Defendant's customers directly to support its allegations. *Id*. at 1476. The District Court denied the request, but the Ninth Circuit reversed recognizing that the "most probative evidence of confusion was to be found by questioning the actual recipients of [Defendant's] mailing[s]" which contained the infringing trademark. *Id*. Similar to the *VISA* case, evidence of Freetech's unlawful marketing efforts, provision of assistance to intercept and/or receive encrypted satellite signals, and primary use of Coolsat receivers can be "found by questioning the actual recipients" of Freetech's unlawful marketing efforts, assistance to intercept and/or receive encrypted satellite signals, and its Coolsat receivers. *See id*.

In *Geophysical Systems Corp. v. Raytheon Co., Inc.*, Plaintiff requested Defendant's customer lists in order to perform discovery related to its claims. 117 F.R.D. 646, 649 (C.D.Cal.1987). The Court held that the customer lists were discoverable because the Plaintiff needed to communicate with Defendant's customers in order to properly prepare its case. *Id*. Just like the plaintiff in *Geophysical Systems*, EchoStar's discovery on Coolsat receiver purchasers will help EchoStar prosecute its claims and defend against Freetech's defenses and counterclaims. *See id*.

In *Turmenne v. White Consol. Indus., Inc.*, Defendant needed to question Plaintiff's customers regarding Plaintiff's marketing efforts. 266 F.Supp. 35 (D. Mass. 1967). The Court held that Defendant was entitled to question Plaintiff's customers and that Plaintiff must produce

---

*Nutratech, Inc. v. Syntech (SSPF) Int'l., Inc.*, 242 F.R.D. 552, 554-55 (C.D. Cal. 2007) (noting that customer lists are customarily produced and can be protected by appropriate designation under protective order); *Atmel Corp. v. St. Paul Fire & Marine*, No. C 04-04082 SI, 2005 WL 3692874, at *1 (N.D. Cal. Aug. 31, 2005) (compelling production of customer lists and noting adequate protection by designation under protective order); *N.L.R.B. v. Cable Car Advertisers, Inc.*, 319 F.Supp. 2d 991, 997 (N.D. Cal. 2004) (requiring disclosure of customer lists subject to protective order because lists were relevant to matter under investigation); *Nalco Chemical Co. v. Hydro Techs., Inc.*, 149 F.R.D. 686, 696-97 (E.D. Wis. 1993) (requiring disclosure of customer information); *Electromatic (PTY) Ltd. v. Rad-O-Lite of Philadelphia, Inc.*, 90 F.R.D. 182, 185 (E.D. Pa. 1981) (requiring disclosure of customer information); *Chesa Int'l, Ltd. v. Fashion Assocs., Inc.*, 425 F.Supp. 234, 237 (S.D.N.Y. 1977) (customer names subject to protective order are proper subject of discovery).

its customer lists. *Id*. at 36. The Court recognized "[i]t would be a virtually impossible task for [Defendant] to track down in rural New England customers or potential customers contacted by the plaintiff without their addresses." Just like the defendant in *Turmenne*, EchoStar should be allowed to perform discovery on Coolsat receiver purchasers to help EchoStar prosecute its claims and defend against Freetech's defenses and counterclaims. *See id*. Furthermore, Coolsat receiver purchasers are located throughout the United States, thus "[i]t would be a virtually impossible task for [EchoStar] to track down" Coolsat purchasers without their contact information. *See id*.

In hopes of supporting its position, Freetech halfhazardly points to *Viacom Int'l Inc. v. Youtube Inc.*, Nos. 07-2103, 07-3582, 2008 WL 2627388 (S.D.N.Y. July 2, 2008). (MPO at 7). In that case, Viacom alleges Youtube.com violated the Copyright Act of 1976 by posting infringing videos owned by Viacom on the internet available for public consumption without Viacom's authorization. *Id*. at *1. Viacom sought discovery related to the use of its copyrighted videos on Youtube.com including the user's logon ID, a video ID and the user's IP address. *Id*. at *4.

In order to better illuminate the flaw in Freetech's reliance upon *Viacom* and other internet-related cases, some background related to the differences in internet and satellite technologies is necessary. Very different from satellite infrastructure, the internet consists of a series of interconnected computers and networks. When an internet user visits a website, a request is made where a series of data is sent to a web server and the web server responds by returning a corresponding series of data to the internet user's browser (e.g., Microsoft Explorer, Firefox). Upon receiving the web server's response, the internet user's browser displays the requested web page. A web server, without a corresponding request from an internet user, does not continuously send data for user consumption. This request/response architecture of the internet enables litigants to determine what videos internet users watched without directly questioning the internet user assuming the web server saved the allegedly infringing request and response on the web server with information such as the user's logon ID, the user's IP address, the watched video's ID, and any other information the web server's owner wishes to capture and

save.

Similar to that just described, the internet users in the *Viacom* case sent requests to Youtube.com's web server(s), and Youtube.com's web server(s) would respond by sending data allegedly containing video that infringed upon Viacom's copyrights. *Id*. During this request/response over the internet, Youtube.com's web server(s) saved information including the user's logon ID, the video ID, the user's IP address, and other information. *Id*. Thus, Viacom had no need to question Youtube.com's users directly about what videos they watched because the watched videos' IDs were already saved on Youtube.com's web server(s)! *See id*.

In stark contrast, DISH Network's satellites continuously transmit satellite signals to Earth. These transmissions can be received by <u>anyone</u> "listening" with a satellite dish much like how anyone can "listen" to broadcast TV through the use of an antenna. Because anyone can listen to its satellite signals, DISH Network encodes its signals to protect against unauthorized use (i.e., piracy). Unlike the internet, a satellite's signal is not responsive to a request, rather, it is continuous just like broadcast TV. Because there are no corresponding requests made by users, it is impossible for EchoStar to determine whether individuals are pirating DISH Network's satellite signals or even "listening" without more, such as conducting a survey analysis.

In the instant case, Coolsat receiver users are located throughout the country. Many Coolsat users purchased their receiver over the internet. These Coolsat users' identities, locations, and piracy habits are largely unknown to EchoStar. Many of these Coolsat users are "listening" to DISH Network's satellite signals yet incapable of detection unlike the situation in the *Viacom* case and other internet-related cases. *See id*. Accordingly, EchoStar seeks customer information helpful to conduct discovery on Coolsat receiver purchasers which will result in highly-probative evidence directly related to EchoStar's claims. Indeed, some of these purchasers are likely critical fact witnesses who should have been disclosed in Freetech's Rule 26(a) disclosures.

## B. The Subpoenas Are Not Harassing, Annoying, or Oppressive

Freetech alleges that "[h]arassment, annoyance, and oppression have been [EchoStar's] goals from the start of this case." (MPO at 7). In its next sentence, Freetech goes on to claim

EchoStar is "aim[ing] at torpedoing business relations among Freetech, its distributors, and end users." (MPO at 7). Freetech then claims that EchoStar's "latest round of 17 subpoenas seeking customer information [necessary to conduct a survey analysis of the only individuals in possession of the relevant and necessary evidence] crosses the line." (MPO at 7).

A party seeking a protective order has the burden to prove that it will suffer specific prejudice or harm. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130-31 (9th Cir. 2003). To meet its burden, the movant must offer more than "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992). Accordingly, to demonstrate "good cause" as Rule 26(c) requires, the movant must provide "specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm." *Foltz* at 1130-1131 (quoting *Deford v. Schmid Prods. Co.*, 120 F.R.D. 648, 653 (D.Md.1987)); and Fed. R. Civ. P. 26(c).

However, Freetech does not offer any specific examples or articulated reasoning as to why it or its distributors have "good cause" for a protective order as required by long-standing precedent and Rule 26(c). *See Foltz* at 1130-31; *Beckman Indus., Inc.* at 476; and Fed. R. Civ. P. 26(c). Conversely, the only thing Freetech offers related to it and its distributors is conclusory allegations that do not even articulate what specific harms might result. *See id*. Consequently, Freetech fails to meet its burden for a protective order based on concerns related to it or its distributors. *See id*. Freetech's other grounds for a protective order—the privacy interests of Coolsat receiver users—are addressed immediately below.

## C. Freetech's Privacy Concerns Do Not Support Denying EchoStar's Request of Customer Lists and Contact Information

Freetech alleges the subpoenas will "invade [Coolsat receiver] purchasers' privacy" but offers scant support for its claim.[3] (MPO at 7). Freetech distorts the holding of a recent decision from this Court, *Gonzalez v. Google, Inc.*, 234 F.R.D. 674 (N.D. Cal. 2006), and ignores decades

---

[3] The EFF's Amicus brief raises similar arguments – again, with no support. For the reasons set forth herein, both Freetech and the EFF's alleged privacy concerns can be adequately safeguarded and addressed by designation of the discovery as CONFIDENTAL pursuant to a protective order limiting the use and disclosure. *See supra,* FN.2 and cases cited therein.

10

ECHOSTAR'S RESPONSE TO
FREETECH'S MPO

of precedent allowing the exact type of discovery EchoStar seeks. *See* cases cited in *supra* note 2 and accompanying text; (MPO at 8).

In *Gonzalez*, the federal government sought information from Google related to its users' search queries. *Id*. It is true, as Freetech claims, that this Court denied the federal government's request for search queries. *Id*. But Freetech fails to mention the categorical differences between the federal government's requests upon Google and the customer information EchoStar seeks. Freetech further distorts the holding in *Gonzalez* by ignoring the duplicative nature of the government's discovery requests and even suggests this Court's only basis for denying the government's requests were privacy concerns. *See id* at 686 (the Court held that the "marginal burden of loss of trust by Google's users" outweighed the "duplicative disclosure's likely benefit to the Government's study.").

In *Gonzalez*, this Court recognized that although the federal government's subpoenas sought two categories of information (i.e., a sample of URLs and search queries), both categories had the same "presumed utility to the Government's study" in building a URL "test set". *Id*. Thus, the federal government's request for both categories of information was "unreasonably cumulative and duplicative". *Id*. Consequently, this Court rightfully allowed only for discovery of the first category of information because the second category provided no added benefit due to its duplicative character. *Id*.

Unlike the government in *Gonzalez*, EchoStar is not seeking "unreasonably cumulative and duplicative" information. *See id*. In fact, EchoStar's subpoenas, just like so many cases that came before it, seek only customer lists of Coolsat purchasers from Coolsat distributors that EchoStar will use to conduct discovery helpful to prosecuting its claims and rebutting Freetech's defenses and counterclaims. *Cf. id*. EchoStar's only apparent sources for this information are Coolsat distributors and each distributor possesses what should be a unique customer list barring situations where a customer purchased Coolsat receivers from more than one distributor. Thus, unlike the government's case in *Gonzalez* each Coolsat distributor's response should be a unique customer list of Coolsat purchasers. *See id*.

///

Furthermore, EchoStar's request does not intrude upon privacy like the government's request in *Gonzalez*. In *Gonzalez*, this Court raised sua sponte privacy concerns about the federal government discovering Google users' search queries. *Id*. at 687. Specifically, the Court recognized that some users entered information into search queries that the user had a privacy interest in and may even include the user's own name (e.g., "[user name] third trimester abortion san jose"). *Id*. (recognizing that search queries sometimes include topics the user has a privacy interest in such as abortion or sexually explicit material). The Court also "recognize[d] that there may be a difference between a private litigant receiving potentially sensitive information and having this information be produced to the Government pursuant to civil subpoena." *Id*.

Two critical facts entirely distinguish the instant case from the *Gonzalez* case. First, EchoStar is a private litigant; not the federal government. Second, EchoStar is not seeking information recognized to raise a strong privacy interest. EchoStar has merely requested from Coolsat distributors their Coolsat purchasers' "name[s], address[es], phone number[s], and email address[es], and the purchase date, purchase price, purchase quantity, and model number for each Receiver" for the purpose of conducting discovery. EchoStar is <u>not</u> seeking <u>any</u> information related to procreation, abortion, marriage, contraception, religion, affiliations, associations, race, gender, age, sexual preferences or legitimacy. *Cf. id*. (the federal government's request would ultimately capture information the Google user had a privacy interest in such as abortion and/or sexually-explicit material).

Freetech goes on to twist *Paramount Pictures Corp. v. Replay TV* in yet another failed to attempt to support its position. *Paramount Pictures Corp. v. Replay TV*, CV 01-9358 2002 WL 32151632 (C.D. Cal. May 30, 2002); (MPO at 9-10). In *Replay TV*, the Court held that Defendants were "obligat[ed] to provide plaintiffs customer-use information presently collected" by Replay TV. *Id*. at *3. Thus, Replay TV was ordered to produce evidence regarding how its customers *actually used* their Replay TV digital video recorders to assist in discovering whether and to what extent Replay TV users were infringing Paramount's copyrights—that is, the Court determined Replay TV users' privacy interests (e.g., viewing habits) were outweighed by Paramount's discovery needs. *See id*. However, as was described above and unlike *Replay TV*,

satellite architecture does not offer the ability to determine whether and to what extent Coolsat users pirate DISH Network's satellite signals without more, such as conducting a survey analysis. *See id*. Further unlike Replay TV, Freetech and its distributors do not maintain a log indicating to what extent its customers pirate DISH Network's satellite signals. *See id*. Thus, the only source of this information is the Coolsat users themselves.

Accordingly, the privacy concerns of Coolsat users alleged by Freetech are substantially outweighed by EchoStar's discovery needs and its right to prosecute its case.

## D. Any Alleged Privacy Concerns Can Be Adequately Protected By Designation of the Evidence as Confidential Under a Protective Order

EchoStar has demonstrated to Freetech the relevance of the sought information, its discoverability and has even offered to enter into a stipulated protective order limiting the use of the information sought to attorneys and experts only. (Hagan Decl. ¶ 4.) A protective order is the appropriate method to protect against any of Freetech's privacy concerns. *See* cases cited in *supra* note 2 and accompanying text. Any privacy concerns may be protected by a properly fashioned protective order just as has been done in the bulk of other similar cases. *See* cases cited in *supra* note 2 and accompanying text.

## V. CONCLUSION & PRAYER

For at least the reasons set forth above, Freetech's Motion for Protective Order must be denied. The information sought is relevant to EchoStar's claims, and probative to EchoStar's defenses to Freetech's counterclaims and alleged affirmative defenses. Freetech cannot be permitted to use their Motion for Protective Order as both a shield and a sword. Accordingly, EchoStar respectfully requests that the Court DENY Freetech's Motion and grant EchoStar all further relief to which it is entitled.

///
///
///
///

Dated: August 25, 2008

Respectfully submitted,

**T. WADE WELCH & ASSOCIATES**


By: /s/ Chad Hagan
    Chad Hagan (*pro hac vice*)

Attorneys for Plaintiffs/Counter-defendants