1  Andrew P. Bridges (SBN: 122761)
   abridges@winston.com
2  Jennifer A. Golinveaux (SBN: 203056)
   jgolinveaux@winston.com
3  Matthew A. Scherb (SBN: 237461)
   mscherb@winston.com
4  WINSTON & STRAWN LLP
   101 California Street
5  San Francisco, CA  94111-5894
   Telephone:     (415) 591-1000
6  Facsimile:      (415) 591-1400

7  Jonathan Bae (SBN: 229967)
   bae@baelawfirm.com
8  LAW OFFICE OF JONATHAN BAE
   2201 Broadway, Suite M5
9  Oakland, CA 94612
   Telephone:     (510) 834-4357
10 Facsimile:      (510) 663-6731

11 Attorneys for Defendant and Counterclaimant
   FREETECH, INC.
12

13                **UNITED STATES DISTRICT COURT**

14                **NORTHERN DISTRICT OF CALIFORNIA**

15                **SAN JOSE DIVISION**

| | |
|---|---|
| 16  ECHOSTAR SATELLITE L.L.C., ECHOSTAR TECHNOLOGIES CORPORATION, and NAGRASTAR L.L.C., | **Case No. 07-6124-JW (RS)** |
| 18             Plaintiffs, | **FREETECH, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER RE PLAINTIFFS' SUBPOENAS SEEKING THE IDENTITY AND CONTACT INFORMATION FOR EVERY PURCHASER OF FREETECH'S FTA RECEIVERS** |
| 19       vs. | |
| 20  FREETECH, INC. and DOES 1-10, | |
| 21             Defendants. | Date:   September 10, 2008<br>Time:  9:00 a.m.<br>Place:  Courtroom 8, 4th Floor, San Jose |
| 22  FREETECH, INC., | |
| 23             Counterclaimant, | |
| 24       vs. | |
| 25  ECHOSTAR SATELLITE L.L.C., ECHOSTAR TECHNOLOGIES CORPORATION, and NAGRASTAR L.L.C., | |
| 27             Counter-defendants. | |
| 28 | |

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................................................1

II. ARGUMENT..................................................................................................................................1

    A. Plaintiffs Fail to Articulate Relevance of the Discovery They Seek. ............................1

        **1.** There is No Reasonable Relevance to DMCA Claims. ....................................1

        **2.** There is No Reasonable Relevance to Communications Act Claims. ...............3

        **3.** There is No Reasonable Relevance to Counterclaims. ......................................4

        **4.** The "Customer List" Cases that Plaintiffs Cite are Inapposite..........................4

        **5.** Plaintiffs' Comparison Between Satellite and Internet Technology Is a Tangent and Obscures the Fact That Plaintiffs Seek Irrelevant Information in This Case. .......................................................................................5

    B. Plaintiffs' Attempts to Distinguish *Gonzales* and *ReplayTV*, which Call for Privacy Protections to Freetech and Coolsat Users, Fail. ...............................................6

    C. Contrary to Plaintiffs' Assertions, the Requested Protective Order Would Not Prevent Plaintiffs from Prosecuting Their Case.............................................................8

    D. Merely Designating Customer Lists as Confidential is an Inadequate Safeguard. .......................................................................................................................9

III. CONCLUSION ..............................................................................................................................9

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

## I. INTRODUCTION

Plaintiffs' opposition fails to demonstrate the relevance of the requested third-party discovery in the face of serious concerns about harassment and invasion of privacy. Plaintiffs' opposition also does nothing to allay those serious concerns raised in Freetech's motion for protective order. For example, Plaintiffs insist on needing to contact Coolsat users directly even when, in similar cases, Plaintiffs' competitor, DirecTV, has chosen alternate ways of collecting evidence.

In fact, Plaintiffs present not one case involving DMCA or Communications Act claims in which a court has ordered production of purchaser lists, let alone authorized a plaintiff's contacting of those purchasers. It is more clear than ever that Plaintiffs intend their July 25 Subpoenas, seeking identifying information for every Coolsat purchaser, to harass Freetech, its distributors, and its customers. Moreover, contrary to Plaintiffs' assertions, a protective order in this context will not prevent Plaintiffs from prosecuting their case.

Freetech requests that the Court enter a protective order under Rule 26(c), curtailing the discovery sought in Plaintiffs' July 25th subpoenas.

## II. ARGUMENT

### A. Plaintiffs Fail to Articulate Relevance of the Discovery They Seek.

Freetech, in its motion, argued that Plaintiffs' July 25 Subpoenas did not reasonably target information relevant to this case. In a parallel scenario on a motion to quash, "[o]nce an objection to the relevance of the information sought is raised, the burden shifts to the party seeking the information to demonstrate that the requests are relevant to the subject matter involved in the pending action." *3Com Corp. v. D-Link Systems, Inc.*, 2007 WL 949596 (N.D. Cal. 2007), citing *Allen v. Howmedica Leibinger, Inc.*, 190 F.R.D. 518, 522 (W.D. Tenn.1999). Plaintiffs have failed to meet their burden to show relevance.

#### 1. There is No Reasonable Relevance to DMCA Claims.

Plaintiffs erroneously argue that contact information identifying Coolsat purchasers bears on all three prongs of their DMCA claim. As set forth in Freetech's opening brief, the DMCA applies to traffickers in products that (a) are "primarily designed or produced for the purpose of circumventing a technological measure" protecting copyright; (b) have "only limited commercially

*Winston & Strawn LLP*
*101 California Street*
*San Francisco, CA 94111-5894*

1

significant purpose or use other than to circumvent a technological measure" protecting copyright; or (c) "is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing a technological measure" protecting copyright.

The identities of Coolsat purchasers relate directly to none of these three prongs. Whether a manufacturer primarily designs a product for a particular purpose, whether a product has a commercially significant purpose, and whether a person markets a product for circumvention with specific knowledge do not hinge on the "name, address, phone number, and email address" of purchasers "and the purchase date, purchase price, purchase quantity, and model number for each Receiver." Plaintiffs have also failed to articulate why they must contact every purchaser of a Coolsat receiver in order to prove their claims.

First, Plaintiffs have failed to explain how purchasers would have information relevant to the first prong and third prong. Purchasers cannot offer competent testimony about the primary reasons a manufacturer chooses to design a product. Nor can they offer competent testimony about whether Freetech acted in concert with any advertisers or whether Freetech acted in any particular situation with specific knowledge. Also, purchasers lack the ability to testify about commercially significant lawful purposes of products.

Second, with respect to the second prong, as set forth in Freetech's opening brief, Plaintiffs do not allege that Coolsat receivers, FTA receivers, and their own receivers are capable of intercepting encrypted broadcasts unless they are first modified with "pirate software." Plaintiffs admit that FTA receivers themselves do not contain the components and software necessary to access DISH Network programming. They state that "[w]hile FTA Receivers contain many of the same components found in an ECHOSTAR set-top box, ***the units cannot descramble and receive DISH Network Programming*** without utilizing the security keys and technology codes found in the Nagra Software (i.e. ROM code segment, EEPROM code segment)." (Compl. ¶ 29 (emphasis added).) And Plaintiffs allege that it is the "FTA Receivers *and* corresponding Pirate Software" that give rise to the alleged DMCA violations. (Compl. ¶ 47 (emphasis added).)

Thus, the "device" at issue here is not the Coolsat receiver, which has acknowledged lawful purposes, but the Coolsat receiver allegedly doctored with alleged pirate software. Plaintiffs did not

contest Freetech's characterization of the DMCA claims. Until Plaintiffs can show Freetech's distribution of Coolsat receivers with pirate software, which Plaintiffs will not be able to show, Plaintiffs' overbroad discovery requesting details about all purchasers of legitimate Coolsat FTA receivers is a fishing expedition this Court should not indulge.

Finally, Plaintiffs fail to explain how they would go about contacting purchasers while minimizing intrusion upon the purchasers' legitimate privacy interests. Before burdening purchasers and invading their privacy with irrelevant and harassing discovery, the Court should, at the very least, obtain full satisfaction that fair, reliable, defensible methods are in place. Plaintiffs have offered none.

### 2. There is No Reasonable Relevance to Communications Act Claims.

Plaintiffs also fail to establish the relevance of the requested discovery to their Communications Act claims. Section 605(e)(4) of the Communications Act makes it unlawful to distribute "any device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming." Section 605(a) of the Act makes it unlawful for an unauthorized person to "receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto."

First, section (e)(4) requires proof that a device is "primarily of assistance" to piracy. Just as in the DMCA's similar "primary purpose" context, whether a Coolsat is "primarily of assistance" to piracy cannot be learned by contacting legitimate purchasers of Coolsat devices. Plaintiffs have already conceded that only Coolsats devices loaded with pirate software can decrypt DISH Networks' programming.

Plaintiffs have failed to cite a single section 605(e)(4) case – or a single DMCA case for that matter –that relies on user testimony to determine whether a device is primarily of assistance to or has a primary purpose of piracy. Nor could Freetech locate such a case. On the contrary, in *DirecTV, Inc. v. DiSalvatore*, No. 02-706, 2003 WL 24051575, at *4 (N.D. Ohio May 21, 2003), an expert opinion, not consumer testimony, provided such evidence about the devices at issue in that case. And in *DirecTV, Inc. v. Budden*, 420 F.3d 521, 531 (5th Cir. 2005), DirecTV submitted its

1   own affidavits to make its proof.

2   Second, section 605(a) largely prohibits *disclosure and use* of intercepted communications. Plaintiffs have overstated section 605(a)'s reach. It does not prohibit the mere interception or assisting with interception, but merely requires that the person intercepting or assisting the interception of a communication also "use[s] such communication (or any information therein contained)." There is no claim in this case that Freetech uses any communication that it allegedly assists Coolsat purchasers in receiving, and users' alleged interceptions are irrelevant. (Moreover, section (a) applies to individual pirates, not persons in the supply chain. *Cf. DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007).)

### 3. There is No Reasonable Relevance to Counterclaims.

For the same reasons that the identities of purchasers are not relevant to Plaintiffs' case, they are not relevant to Freetech's counterclaims. Plaintiffs contention that Freetech seeks a protective order as both a "sword and a shield" is baseless. Freetech does not intend to invade the lives of its own users by harassing its distributors for customer lists so it can be the only one to talk to Coolsat purchasers. Freetech does not seek a gag order on Plaintiffs to restrict their conversations with Coolsat users, as was the issue in the inapposite case Plaintiffs cite, *Sony Computer Entm't Am. v. NASA Elecs. Corp.*, 249 F.R.D. 378, 384-85 (S.D. Fla. 2008).

### 4. The "Customer List" Cases that Plaintiffs Cite are Inapposite.

Unable to show reasonable relevance of purchaser identities to its DMCA and Communications Act claims, Plaintiffs try to argue that courts, in general, allow discovery of customer lists. But a court must consider relevance to the pleadings in the case before it. Customer lists may have relevance for some claim but not others. Crucially, the cases Plaintiffs' cited did not involve claims under the DMCA or the Communications Act. Nor do they involve third-party subpoenas targeting customer lists. Plaintiffs shared many of their cases with Freetech when the parties conferred about this motion and Freetech explained to Plaintiffs about the cases' shortcomings. Plaintiffs still have not found relevant authority and have not made any sound argument why the cases they cite should require the same result in a DMCA or Communications Act case, especially and in the context of a third-party subpoena.

Plaintiffs' lead case, *VISA Intern, Service Ass'n v. Bankcard Holders of America*, 784 F.2d 1472, 1473 (9th Cir. 1986), is a trademark case, where the issue was consumer confusion. While surveying consumers may be relevant on the issue of consumer confusion, Plaintiffs have not sued Freetech for trademark infringement, and consumer impressions of unspecified advertising from unspecified sources are irrelevant to Plaintiffs' claims.

Plaintiffs' other cases are similarly irrelevant. At least one does not even address whether customer lists are relevant. *See, e.g., Nutratech, Inc. v. Syntech (SSPF) Intern, Inc.*, 242 F.R.D 552, 554 (C.D. Cal. 2007) (deciding what level of confidentiality to apply to customer lists, not whether they were relevant and subject to production in the first place). Yet another, *Pioneer Electronics (USA), Inc. v. Superior Court*, 40 Cal.4th 360 (2007),[1] gave consumers the right under state law to object to contacts from a party to the case.

### 5. Plaintiffs' Comparison Between Satellite and Internet Technology Is a Tangent and Obscures the Fact That Plaintiffs Seek Irrelevant Information in This Case.

In a last attempt to explain a need for the requested discovery, and in an attempt to distinguish the *Viacom* and *ReplayTV* cases in which user identities received protection, Plaintiffs argue that because satellite broadcasters like themselves cannot record as much data about user activity as Internet websites, the Court should favor them with otherwise impermissible discovery.

Plaintiffs assert that viewing content over the Internet can leave a data trail recording users' information and what they watch. Plaintiffs then state that viewing satellite programming does not leave such a trail, and that they therefore need to speak with users about their use. But even if the data in typical Internet logs existed for satellite transmission views, they would be unhelpful to Plaintiffs here.

In any event, there are no logs in this case. And the issue is whether Plaintiffs' requested discovery, its request for information about all Coolsat purchasers, is proper.

What *Viacom* and *ReplayTV* – both secondary copyright liability cases (not DMCA or

---

[1] Plaintiffs cite this case in its response to EFF's brief. Freetech does not concede that Plaintiff's response to the EEF brief was timely or otherwise proper.

1  Communications Act cases) – show is that user privacy concerns are very important. *ReplayTV*

2  actually held that the provider of a system lacking logging capability did not have to create a logging

3  capability for litigation to identify customers and instances of direct infringement. *Paramount*

4  *Pictures Corp. v. ReplayTv*, No. 01-9358, 2002 WL 32151632, at *2 (C.D. Cal. May 30, 2002). As

5  noted in Freetech's motion, this result came about after the *ReplayTV* court had already denied broad

6  access to customer data. (Def's. Mot. at 9.)

       **B.**    **Plaintiffs' Attempts to Distinguish *Gonzales* and *ReplayTV*, which Call for Privacy Protections to Freetech and Coolsat Users, Fail.**

9        Plaintiffs acknowledge that this Court's decision in *Gonzales v. Google, Inc.*, 234 F.R.D. 674

10  (N.D. Cal. 2006), recognizes that invasion of user privacy and the resultant loss of trust are two

11  grounds that can call for a protective order denying discovery. (Pl's. Opp. at 11.) Yet Plaintiffs

12  believe that *Gonzales* differs from this case because there the Government had alternate means of

13  getting the discovery it sought. That is also the case here.

14        As mentioned above, Plaintiffs' competitor DirecTV has, in the past, for its Communication

15  Act cases, relied on expert opinion or its own affidavits. *See DiSalvatore*, 2003 WL 24051575, at

16  *4; *Budden*, 420 F.3d at 531. Moreover, Plaintiffs have already asked distributors to produce

17  "documents sufficient to identify each website on which You advertise" and numerous

18  communications between distributors and Freetech. (Golinveaux Decl., Exh. A, ¶¶ 4, 6, 8, 11.) And

19  as already discussed, consumers are not likely in a position to testify competently about issues that

20  involve the state of mind of Freetech, designers, or marketers.

21        Plaintiffs' other attempts to distinguish *Gonzales* lack merit. First, Plaintiffs' suggestion that

22  users' privacy in their television viewing habits is less than their privacy in a collection of search

23  terms, the key to their viewing habits on the Internet, strains credibility. Further, whatever data

24  actually get out about a user, the invasion to the user and the perception of invasion remains, and the

25  trust that Freetech and the distributors loose remains.

26        Second, Plaintiffs miss the point about the observation in *Gonzales* that the case involved a

27  government subpoena. The court there worried that the government might act upon discovering

28  evidence of unlawful conduct. 234 F.R.D. at 687. The same risk applies here. Plaintiffs may strive

**Winston & Strawn LLP**
**101 California Street**
**San Francisco, CA 94111-5894**

1  to locate people violating their rights, who would be subject to discretionary "prosecution" just as

2  feared in *Gonzales*. In any event, the Court did "not express an opinion on this issue" because it had

3  already decided not to allow production of search logs containing the person-identifying

4  information. *Id.* at 687-688.

5  Finally, Plaintiffs do not address the crucial similarity between *Gonzales* and this case: both

6  involve non-party discovery by subpoena, a context in which courts rightly grant more protection.

7  As this Court noted in *Gonzales*, "the word 'non-party' serves as a constant reminder of the reasons

8  for the limitations that characterize 'third-party' discovery." 234 F.R.D. at 679-80 (citing *Dart*

9  *Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir.1980)) (citations and internal quotes

10 omitted).

11 Concerning *Paramount Pictures Corp. v. ReplayTv*, No. 01-9358, 2002 WL 32151632 (C.D.

12 Cal. May 30, 2002), Plaintiffs rush over the most crucial parts of a decision that protected user

13 privacy even in a context where identifying consumers individually would be far more relevant than

14 it is here. In *ReplayTV*, plaintiffs sought to hold ReplayTV secondarily liable for the direct

15 infringements of its users. To prove direct infringements, plaintiffs would ultimately need to prove

16 what individuals did – that they copied particular works and that their copying was not a fair use or

17 otherwise authorized. *See, e.g.*, *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 726 (9th Cir.

18 2007) ("There is no evidence in the record directly establishing that users of Google's search engine

19 have stored infringing images on their computers, and the district court did not err in declining to

20 infer the existence of such evidence."). The DMCA on the other hand, does not turn on proof of

21 users' infringements.

22 Yet even in *ReplayTV*, the court refused to require data regarding user logging. 2002 WL

23 32151632, at *2. *ReplayTV* also refused to order production of "all Documents relating to, regarding,

24 referring to, or reflecting any order for purchase of a ReplayTV 4000 . . . or any sale." *Id.*;

25 *Paramount Pictures Corp. v. ReplayTV, Inc.*, No. 01-9358 (C.D. Cal. April 26, 2002), *available at*

26 http://www.eff.org/files/filenode/Paramount_v_ReplayTV/20020426_order.pdf. And finally,

27 *ReplayTV* carefully limited an interrogatory seeking "[a]ny and all Documents relating to, regarding,

28 referring to, or reflecting the identity of any Person (whether employed by Defendant or otherwise)

*Winston & Strawn LLP*
*101 California Street*
*San Francisco, CA 94111-5894*

who has been provided access to, or use of, the ReplayTV 4000 for any purpose" so that only those provided access to the ReplayTV 4000 "for purposes of testing, sampling, reviewing, advertising, promoting, or evaluating [its] features or functions" could be named. *Paramount Pictures Corp. v. ReplayTV, Inc.*, No. 01-9358 (C.D. Cal. April 26, 2002), *available at* http://www.eff.org/files/filenode/Paramount_v_ReplayTV/20020426_order.pdf.

*Columbia Pictures Industries v. Bunnell*, 2007 U.S. Dist. LEXIS 46364 (C.D. Cal. May 29, 2007), *aff'd* 245 F.R.D. 443 (C.D. Cal. 2007), reflected the same concern over user privacy. *Bunnell* also involved secondary liability claims, against an Internet website, TorrentSpy, that made certain kinds of media files available to users. Yet even in *Bunnell* – which required production of some server logs of user activities – the Court protected user privacy by "direct[ing] defendants to mask users' IP addresses before the Server Log Data is produced." 2007 U.S. Dist. LEXIS 46364 at *36. Also, the court in *Bunnell*, assuming TorrentSpy users were "entitled to limited First Amendment protection" based its conclusion of no First Amendment violation on "the fact that [server log] data does not identify the users of defendants' website and that the IP addresses of such users have been ordered to be masked." *Id.* at *39; *see also Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443 (C.D. Cal. 2007) (reviewing the Magistrate) ("Plaintiffs are not requesting the names or other identifying information . . . and the May 29 Order ensures that such identifying information will not be disclosed.").

Courts take privacy seriously, because of both the harm to users whose private information becomes public and the reputational harm to companies forced to disclose such data in breach of trust.

Given Plaintiffs' failure to show reasonable relevance and given the burden on Freetech, the distributors, and users, a protective order denying discovery is appropriate.

**C.   Contrary to Plaintiffs' Assertions, the Requested Protective Order Would Not Prevent Plaintiffs from Prosecuting Their Case.**

Although Plaintiffs would like to obtain the identities of every single Coolsat purchaser, Plaintiffs do not need this information to prosecute their case. Freetech believes the information is not relevant. Even if relevant, the information is simply not necessary. As noted above, to offer

8

proof in Communications Act cases on whether a challenged device is primarily of assistance to or has a primary purpose of piracy, DirecTV, Plaintiffs' competitor, has relied on expert opinions, *e.g.*, *DirecTV, Inc. v. DiSalvatore*, No. 02-706, 2003 WL 24051575, at *4 (N.D. Ohio May 21, 2003), or its own affidavits, *e.g.*, *In DirecTV, Inc. v. Budden*, 420 F.3d 521, 531 (5th Cir. 2005).

### D.   Merely Designating Customer Lists as Confidential is an Inadequate Safeguard.

Plaintiffs' final suggestion is to have the Court order production of customer information pursuant to a confidentiality agreement. This is an inadequate safeguard. The harm is not only in the publication of names of Coolsat users, but in Plaintiffs' or their agents' making invasive contacts to consumers, inquiries about their viewing habits, asking them if they are breaking the law, and intimidating them. Potential purchasers of lawful Coolsat devices will be afraid to buy, not wanting to subject themselves to potential harassment from Plaintiffs. This will have a chilling effect on the use of, and market for, lawful Coolsat and other Free-To-Air receivers.

## III.   CONCLUSION

For all the reasons set forth above and in its motion, Freetech respectfully requests that the Court issue a protective order denying Plaintiffs access to the information sought in their July 25 Subpoenas and enjoining them from pursuing or enforcing the subpoenas.

Dated:  September 2, 2008        Respectfully submitted,

WINSTON & STRAWN LLP

By:   /s/
Andrew P. Bridges
Jennifer A. Golinveaux
Matthew A. Scherb