*E-FILED 9/29/08*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ECHOSTAR SATELLITE LLC, et al., | NO. C 07-6124 JW (RS) |
| Plaintiffs, | |
| v. | **ORDER GRANTING MOTION FOR A PROTECTIVE ORDER** |
| FREETECH INC., et al., | |
| Defendants. | |
| FREETECH, INC., | |
| Counterclaimant, | |
| v. | |
| ECHOSTAR SATELLITE LLC, et al., | |
| Counter-defendants. | |

## I. INTRODUCTION

Defendant Freetech, Inc. ("Freetech") moves for a protective order under Rule 26(c) of the Federal Rules of Civil Procedure regarding seventeen subpoenas that plaintiff Echostar Satellite LLC, Echostar Technologies Corporation, and Nagrastar LLC (collectively "Echostar") served on Freetech's distributors seeking the identity and contact information for every purchaser of Freetech's Free-to-Air ("FTA") receivers.  Echostar opposes the motion.  For the reasons stated below, Freetech's motion will be granted.

## II.  BACKGROUND

Echostar[1] brings suit under the Digital Millennium Copyright Act ("DCMA"), 17 U.S.C. §§ 1201(a)(2) and 1201(b)(1), and the Communications Act, 47 U.S.C. §§ 605(a) and 605(e)(4), alleging that Freetech manufactures, imports, provides, or otherwise traffics in the sale of illegal pirate devices, components, and technology.  Echostar maintains that Freetech's FTA receivers (branded as Coolsat receivers)[2] are primarily designed for unlawful purposes and that Freetech, directly and/or in concert with others, provides assistance to intercept and/or receive DISH Network's encrypted satellite signals.  There is no dispute that Freetech's FTA receivers as sold are not capable of intercepting Echostar programming but must be modified or combined with other devices to accomplish that end.

On June 25, 2008, Echostar served seventeen subpoenas on Freetech's distributors seeking the identity and contact information of every individual who purchased a receiver between January 1, 2003, through June 30, 2008.  The subpoena also sought the purchase date, price, quantity, and model number for each receiver.  In response to the seventeen subpoenas, Freetech argues that the requests are not likely to lead to the discovery of information relevant to the claims or counterclaims, would intrude upon the legitimate privacy interests of Coolsat purchasers, and would chill legitimate sales of Freetech's FTA receivers.  Conversely, Echostar maintains that the requests are reasonably calculated to the discovery of relevant evidence and that Freetech has not satisfied its Rule 26(c) burden of showing good cause for the protective order.  As for the privacy interests invoked, Echostar insists that it is not seeking information implicating any such protectible interests, and that any other privacy concerns that arise can be

---

[1] Echostar is in the business of providing copyrighted pay-TV programming via satellite broadcast.  To access Echostar's encrypted programming, subscribers to DISH Network are provided with a satellite dish and receiver that grants them access to decrypt only the copyrighted programming included in the subscriber's authorized programming package.

[2] For the purposes of this motion, FTA receivers and Coolsat receivers will be used interchangeably.

1  addressed through a properly crafted order which limits the use of the information sought to
2  attorneys and experts only.

### III. LEGAL STANDARD

Rules 26 and 45 of the Federal Rules of Civil Procedure govern the discovery from nonparties by subpoena. *See Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994) (applying both Rule 26 and Rule 45 standards to rule on a motion to quash subpoena). Under Rule 26, a court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense. Fed. R. Civ. P. 26(c). The moving party has the burden of showing a particular need for protection under Rule 26(c). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (quoting *Cipollone v. Ligget Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)). Additionally, Rule 45 provides that "on timely motion, the issuing court must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(3)(A).

### IV. DISCUSSION

Freetech moves for a protective order under Rule 26(c) to curtail third party discovery seeking the identity and contact information for every purchaser of Freetech's FTA receivers. Echostar contends that the discovery of customer lists is commonly allowed. None of the cases Echostar relies upon relate to either DMCA or Communications Act claims. Echostar's lead case, *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1473 (9th Cir. 1986), involves trademark infringement. In that case, plaintiff Visa's discovery requests sought lists identifying the recipients of promotional kits and purchasers of defendant's insurance. *Id.* The Ninth Circuit held that discovery of the mailing lists and customer responses constituted the most probative evidence of public confusion regarding Visa's trademark. *Id.* at 1475. Echostar also cites to *Turmenne v. White Consol. Indus., Inc.*, 266 F. Supp. 35, 37 (D. Mass. 1967), an antitrust case, in which the court held that a manufacturer was entitled to discovery of the names and

addresses of a retailer's customers to determine from them whether the retailer engaged in improper conduct in marketing sewing machines. The court determined discovery was proper because the manufacturer specifically alleged that the retailer induced customers to visit the store for a free sewing machine and then foisted the purchase of more expensive machines on those customers. *Id.*

Those cases and the others relied upon by Echostar do not support the discovery it seeks in this DMCA and Communications Act litigation. The DMCA provides that no person shall manufacture, provide, or otherwise traffic in any device that: (1) is primarily designed for the purpose of circumventing an access control system; (2) has only limited commercially significant purposes other than to circumvent an access control system; or (3) is marketed by that person for use in circumventing an access control system. 17 U.S.C. § 1201(a)(2)(B). *Turmenne* and *VISA Int'l Serv. Ass'n* are not analogous here in that DMCA claims do not turn on the public perception of marketing schemes. Any information that customers could provide would be of minimal probative value. Purchasers can neither offer information on whether Freetech primarily designed or produced a device for the purpose of circumventing an access control system nor can they testify regarding the commercially significant lawful purposes of Coolsat receivers. Furthermore, unlike in *Turmenne* and *VISA Int'l Serv. Ass'n*, Echostar has several alternative, less intrusive means to obtain evidence regarding its DMCA claims. Rather than customer surveys, Echostar has the ability to seek the discovery of marketing materials and piracy software from distributors, or to use experts to examine the FTA receiver industry.

The availability of such alternative sources of information must be weighed against the markedly intrusive use of the contact information that Echostar intends to pursue. The proposed discovery here is intended to identify by whom and to what extent satellite piracy is being conducted using Coolsat receivers. Presumably both those who purchase the FTA receivers for proper and improper purposes will be swept up in the process. In the trademark actions to which Echostar points, the customer base represented neutral purchasers for whom contact, while

potentially intrusive and inconvenient, would not implicate their own interests. Here, the use of the FTA receivers are very much in controversy.[3] The fact remains that possession and use of FTA receivers are not illegal. Without modification with piracy software, FTA receivers cannot intercept encrypted programming. The requests for customer lists, therefore, could lead to the perceived harassment of legitimate users and a concomitant chilling effect on the purchase and lawful use of Freetech's FTA receivers. This, as noted above, must be balanced against a marginal showing of relevance at best.

Just as with the DMCA, the relevance analysis and balancing test for purposes of the Communications Act produces the same result. The Communications Act provides that no person not entitled thereto shall receive or assist others to intercept and/or receive encrypted satellite signals for his own benefit or for the benefit of another similarly not entitled thereto. 47 U.S.C. § 605(a). That provision targets individuals who use piracy devices to intercept satellite signals, and not assemblers, manufacturers, and distributors of piracy devices which are targeted in Section 605(e)(4). *DirecTV, Inc. v. Hoa Huynh,* 503 F.3d 847, 854 (9th Cir. 2007).[4] The Communications Act also protects against persons designing, manufacturing, selling or otherwise distributing devices while "knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to home satellite services." 47 U.S.C. §605(e)(4).

---

[3] For example, in *Buckley v. DirecTV, Inc.*, 276 F. Supp. 2d 1271, 1273 (N.D. Ga. 2003), DirecTV sent demand letters to thousands of purchasers, identified from customer lists, of devices thought to be used in connection with signal piracy. The letters notified purchasers of the illegal nature of the alleged piracy and offered to resolve potential litigation by way of settlement prior to the filing of a complaint. Plaintiffs received the threatening letters and brought suit under various state claims. Similarly, in *DirecTV v. Cavanaugh*, 321 F. Supp. 2d 825, 833-34 (E.D. Mich. 2003), DirecTV obtained records listing the sale of piracy devices to thousands of private individuals and initiated a program to target those individual purchasers, including defendant, in spite of having no evidence of signal interception.

[4] Even if a Section 605(a) claim is properly brought against a manufacturer, it does not change the issue of customer lists for the purposes of this motion.

1 Echostar fails to explain how the discovery of customer lists and the survey of those
2 customers would lead to relevant evidence concerning whether the persons involved in the
3 design, manufacture, or sale of the FTA receivers know or have reason to know that they are
4 "primarily of assistance" in the decryption of access control systems.  The focus is on the
5 knowledge possessed by those in the business of making the device available to the consumer,
6 not the knowledge held by each of those purchasers.  Even if Section 605(e)(4) was simply
7 concerned with the primary use of the device for unauthorized decryption and not the knowledge
8 of manufacturers and distributors of the device, there exists no case law that supports the
9 granting of customer lists in a Communications Act claim.  In *DirecTV, Inc. v. DiSalvatore*, No.
10 5:02 CV 00706, 2003 WL 24051575, at *4 (N.D. Ohio May 21, 2003), a case that alleged a
11 violation of the Communications Act, it was expert rather than consumer testimony, that was
12 relied upon in determining that the device in question was designed and primarily used for
13 unauthorized reception of DirecTV satellite television programming.

14 Finally, Echostar's argument that the customer lists are necessary for determining the
15 number of violations and the computing of damages under Section 605(e)(3)(C)(i) of the
16 Communications Act presents a closer question.  Again, however, the balance between the need
17 for the requested information versus the negative impact on the subpoenaed parties and their
18 customers shifts in favor of the latter.  While the requested information might assist in
19 determining the extent of damages incurred by plaintiffs here, alternate, less intrusive avenues to
20 obtain the information needed for that purpose are available.  As this Court previously noted,
21 "the word 'non-party' serves as a constant reminder of the reasons for the limitations that
22 characterize third party discovery." *Gonzales v. Google, Inc*., 234 F.R.D. 674, 679-80 (N.D. Cal.
23 2006) (quoting *Dart Indus. Co. Inc. v. Westwood Chemical Co. Inc.*, 649 F.2d 646, 649 (9th Cir.
24 1980)).

## V. CONCLUSION

26 Accordingly, Freetech's motion for a protective order to preclude discovery by way of

1  the seventeen subpoenas to non-party distributors seeking the identity and contact information
2  for every purchaser of Freetech's FTA receivers is granted.
3      IT IS SO ORDERED.

6  Dated: September 29, 2008

   _____
   RICHARD SEEBORG
   United States Magistrate Judge

27 ORDER GRANTING MOTION FOR A PROTECTIVE ORDER
   C 07-6124 JW (RS)
28                          7